*Franklin County, August Term,* 1821.

Before Judges McLean and Hitchcock.

LESSEE OF MOORE *v.* VANCE.

*Deeds.*

The provision of the ordinance requiring deeds to be attested by two witnesses, repealed from August 1, 1795.

Executed between 1st of August, 1795, and 1st of June, 1805, valid, without any subscribing witness, if acknowledged by the grantor.

Acknowledgment taken by a judge of the territory, in one of the United States, good.

THIS was an action of ejectment brought to recover three hundred acres of land, in the county of Franklin.

The plaintiff exhibited in evidence the copy of a patent from the United States to Jonathan Dayton, bearing date in 1800; a power of attorney from Dayton to E. Bonham, dated March 4, 1806, authorizing the sale of three hundred acres of land to the lessor of the plaintiff, which is the same in controversy; and a deed from Dayton, by his attorney, to Moore, dated April 9, 1806.

The defendant offered in evidence a letter of attorney from Jonathan Dayton to himself, dated August 3, 1802, empowering him to sell four thousand acres, of which the land in controversy is part; a deed from Dayton, by his attorney, Joseph Vance, to his

brother, Alexander Vance, for four hundred acres, dated the 2d June, 1803, duly acknowledged and recorded in Franklin county, but *without attesting witnesses.* To the last deed the counsel for plaintiff 2] objected; *but the objection was overruled and the deed admitted in evidence. The defendant then exhibited a deed from Alexander Vance to himself for the land in dispute, which was dated in 1813, and duly executed, acknowledged, and recorded. The plaintiff then offered to prove that J. C. Symmes, the judge of the territory before whom the acknowledgment of the letter of attorney from Dayton to Vance purported to have been taken, was at the time out of the territory, and therefore had no authority to act in his official capacity; but the court being of opinion that such proof would not avail the plaintiff, overruled the testimony. The plaintiff also offered testimony to establish fraud between Joseph and Alexander Vance, and that the deed was executed to the latter in trust for the former.

The court suffered the plaintiff to prove the declaration of Alexander Vance while he held title to the premises, to show the nature of his claim, and in what right he held the land. The jury returned a verdict for defendant.

The plaintiff moved for a new trial, principally on two grounds.

1. The court erred in admitting the deed from Dayton, by his attorney, Joseph Vance, to Alexander, inasmuch as there were no subscribing witnesses.

2. The court excluded the evidence offered by the plaintiff to show that J. C. Symmes took the acknowledgment of the letter of attorney from Dayton to Vance without his jurisdiction.

J. R. & O. PARISH, and IRVIN, in support of the motion, insisted:

1. That, by the ordinance for the government of the territory northwest of the river Ohio, passed 1787, no conveyance of real estate could be valid, unless "attested by two witnesses," etc. This provision of the ordinance was "to remain in force until the governor and judges should adopt laws," etc. The law adopted by the governor and judges, from the Pennsylvania code, and published at Cincinnati, 1795, does not alter the mode of executing deeds for lands. It is, as it purports to be, "a law establishing a recorder's office," and merely provides how deeds shall be proved before they shall be admitted to record in the territory. It was

2

adopted to be the guide of the *recorder*, and not of the *vendor* and *vendee.* To prevent forged deeds from record, the eighth section enacts that "all deeds, etc., shall be acknowledged by one of the grantors or bargainers, or proved by one or more of the subscribing witnesses, etc., and shall be recorded, etc., within twelve months." If it should be contended that a deed is valid under this law, which is either *proved or* acknowledged, the argu- [3 ment would involve this absurdity, that a deed acknowledged by one of the grantors must be admitted to record without either proof or acknowledgment on the part of the other. If proof or acknowledgment is necessary to give validity to a deed, as to one grantor, no good reason can be given why it should not be equally requisite as to two or more. The policy of the law is to prevent impositions, and clearly requires proof or acknowledgment, before some judicial officer of the territory, before the deed shall be evidence of title in the grantee, or constructive notice to subsequent purchasers for a valuable consideration. If a deed is good without any subscribing witnesses, the acknowledgment, the mere declaration of one grantor, furnishes conclusive evidence against his co-grantors. This would be so contrary to the general rules of law, and so repugnant to every principle of justice, that the court will never give the act such construction, unless required by the most unequivocal and express declaration of the will of the legislature. As the acknowledgment, through abundant caution, was superadded to the attestation required by the ordinance, a declaration of one of the grantors was deemed sufficient *prima facie* evidence against others in the same deed. By adopting this construction, the requisitions of the law may be reconciled to common sense and justice.

But why speak of proving deeds by *one or more* of the subscribing witnesses, if none were necessary to its validity? The governor and judges in adopting this law had evidently in view the ordinance requiring two witnesses to a deed, and they intended merely to save the inconvenience of calling both, and therefore provided that proof by either, or an acknowledgment by one grantor should be sufficient to admit the conveyance to record. The law of 1795 clearly did not dispense with subscribing witnesses; but merely declared the manner of proof. Its terms are as clear as if it had been thus enacted : *two witnesses shall be required to a deed ; but proof of its execution may be made by either ;*

*or one of the grantors may acknowledge it before a judge or justice of the peace of the territory, and this shall dispense with the necessity of proof by either of the subscribing witnesses.* If it had been the intention of the governor and judges, who adopted and published the law of 1795, to alter the provision of the ordinance in respect to the execution of deeds, they would have sought for a law, clear and explicit in its terms, and would not have left a subject of this importance to doubt and construction.

4] *The law of 1802 is still more vague in its terms than that of 1795. It is a rule that laws relating to the same subject are to be taken together and reconciled, if possible, so as to give every part effect. There is nothing either in the law of 1795, or of 1802, repugnant to the ordinance. The first declares how deeds for the conveyance of land shall be *executed*; the other how they shall be *proved* before they shall be admitted to record. In this construction there is neither repugnance, contradiction, nor absurdity. It leads to no injustice or mischief.

In England, ever since the statute of frauds and perjuries, two witnesses have been required to a deed, and the law in nearly every state in the Union is the same. It is scarcely probable that in an infant settlement, the governor and judges intended to set themselves up as wiser than Congress and the legislatures of the " original states."

The first law of Ohio is explicit upon the subject; and it is a general understanding amongst the bar that there has been no time since the ordinance of 1787 that a deed has been valid without two subscribing witnesses.

2. The proof offered, that the judge took the acknowledgment of the power of attorney without the territory, and without his jurisdiction, ought to have been admitted. A judicial officer has no authority to exercise his powers without his jurisdiction. He has as much right to do one act without his limits as another. If he can take the acknowledgment of a deed, may he not hold to bail, commit for offenses, or sit in judgment upon the lives of men ? The law is indeed silent as to the exercise of his powers without his jurisdiction; but reason and policy forbid such implied authority. The case of Jackson, ex dem, of Wyckoff *v.* Humphrey, 1 Johns. 498, is an authority in point. To be sure that was *ex parte* proof of the execution of a deed taken in a foreign jurisdiction; but an acknowledgment is tantamount, and the effect precisely the

same. They are both *ex parte* proof of the execution; they are both the act of a judicial officer; they are neither of them higher than *prima facie* evidence; and can be repelled by testimony on the other side.

Swan, Beecher, and Brush, *contra:*

The ordinance of 1787 permitted lands to pass by deed executed in the presence of two attesting witnesses, "provided such conveyances were acknowledged or the execution duly proved," etc. It is clear by the ordinance, *that a deed attested [5 by two witnesses passed the land with an *acknowledgment*, without proof, or with *proof,* without any acknowledgment. It is also conceded that before the adoption and publication of the law of 1795, no deed passed the land in the territory without two subscribing witnesses. The question turns wholly upon the express or implied repeal of the ordinance, so far as the same respected the execution of deeds. The law of 1795 was passed in Pennsylvania in 1775, and is believed to be still in force in that state, and to be the only one relating to the execution of deeds. It was enacted to prevent the inconvenience and unnecessary strictness required by the act of 1715 (4 Binney, 204). It does, indeed, purport to be "a law establishing the recorder's office;" but the terms of the eighth section are too strong and the intention too obvious to be misunderstood. "All deeds and conveyances which shall be made and executed within this territory, etc., shall be acknowledged by one of the grantors or bargainers, *or* proved by one or more of the subscribing witnesses to such deed, etc., and shall be recorded, etc., within twelve months," etc. The adoption of this law is most clearly an exercise of the powers given to the governor and judges by the ordinance "to adopt and publish in the district such laws of the original states, both civil and criminal, as might be necessary and best suited to the circumstances of the district." The ordinance vested no express power in the governor and judges to repeal any of its provisions; but, by the most irresistible implication, the mode of executing deeds, pointed out by it, should only be observed "until the governor and judges should adopt laws on the subject" from the original states. The language of the ordinance is: "And until the governor and judges shall adopt laws, etc., estates may be devised or bequeathed by will, etc., and real estates may be conveyed by lease and release, or bar-

gain and sale signed, sealed, and delivered by the person of full age, in whom the estate may be, and attested by two witnesses, provided such wills be duly proved, and such conveyances be acknowledged *or* the execution thereof duly proved and be recorded within one year after proper officers, etc., shall be appointed for that purpose."

This law must be taken as a substitute for the ordinance so far as it respects the execution of deeds, and is equivalent to an express repeal of it. Then the deed under consideration must stand or fall by the adopted law of 1795 or the act of the territorial legislature of 1802.

6] *The law of 1795 contains two distinct modes of executing deeds, either of which renders them valid and effectual in law; the one in the presence of witnesses, and by proof by one or more of such witnesses; the other by an acknowledgment before some judge or justice of the peace, by one of the grantors. This law seems *well suited to the circumstances* of a territory when the population was sparse and when there were but few judges or justices of the peace. Its enactments are therefore in strict accordance with the requisitions of the ordinance. The language of the law is unequivocally n the alternative, and the construction for which the plaintiff contends would render nugatory the statute of Pennsylvania of 1775. It would, indeed, subject parties to all the inconvenience experienced under the law of 1715, to remedy which was the express intention in enacting the one adopted by the governor and judges of the territory.

But the ordinance, as well as the law of 1795, was expressly repealed by the territorial act of 1802. The latter is an "act providing for the acknowledgment and recording of deeds in certain cases;" but in fact provides for all possible cases within or without the territory. The third section contains substantially these words: "And all deeds and conveyances which shall be made within said territory for the conveyance of any lands, tenements, or hereditaments situate within the same, etc., shall *be acknowledged or proved and recorded* within six months from the actual signing or executing said deeds, etc.; and if they shall not be acknowledged *or* proved and recorded, they shall be deemed fraudulent," etc. The last section repealed all laws and acts of the territory that came within the purview of that act.

The common law required no witness to a deed. The seal was proved *viva voce* in open court. It is difficult to excite a doubt upon

the intention of this law.   Before a deed should be evidence, it must *be proved* or *acknowledged and recorded.*   The proof required must be that which the pre-existing laws had made necessary to an instrument under seal; in other words, common law proof.   If there were attesting witnesses living, their evidence must be had; if dead, proof of the handwriting; if there were no witnesses, proof of the handwriting of the grantor.   Tantamount to such proof is the acknowledgment of the grantor.   No argument can elucidate these propositions.   This deed, therefore, being acknowledged, answered every requisite of the law, and was properly admitted in evidence to the jury.

*In addition to the plain meaning of the statute, the people [7 uniformly acted upon this construction.   The deeds from 1795 till 1805, when the legislature of the state passed the first law upon the subject, are generally found without subscribing witnesses when an acknowledgment has been taken, and when there has been no acknowledgment, with one or more subscribing witnesses.   The general practice was to acknowledge all deeds without subscribing witnesses.   Should this practice now be decided to be illegal, it would destroy the titles under the territorial government.   The case of McKean *v.* Delancey's lessee, 5 Cranch, 22, shows how strongly courts under similar circumstances lean toward the established practice under a particular statute.   The Supreme Court of Pennsylvania, McFerrin et al. *v.* Powers et al., Serg. & Rawl., have made a similar decision.   Infinite mischief would follow from a construction of a law, upon which land titles depend, different from the settled custom of the people.

The practice shows a contemporary construction of the law, and the court ought accordingly to decide, unless the practice should be found manifestly against the true construction of the law.

2. The counsel for the plaintiff maintain that a new trial should be granted, because the court rejected testimony tending to show that Symmes, judge of the territory, took the acknowledgment of the letter of attorney from Dayton to Joseph Vance, in New Jersey, without his jurisdiction.   They rely principally upon the case of Jackson, ex dem. of .Wyckoff, *v.* Humphreys, 1 Johns.   498. We contend that this was not law before nor since the time it was made.   It is against the settled law since the time of Chief Justice Pratt.   8 Mod. 323.   " The court held that a plaintiff who was in Holland might make affidavit there and get it attested by a pub-

lic notary; and that it should be admitted as evidence to hold the defendant to bail here." It is very certain that a party making a false affidavit in Holland, could not be indicted for perjury in England; and it is also very certain that if the act was "void," a defendant would not have been held to bail under it.

In the case of Omedly *v.* Newell, 8 East, 364, the authorities are all brought together, and it was adjudged that an affidavit made by an American citizen in Paris under the laws of France, was not "void," but sufficient to hold to bail in England.

It would be very novel should our courts give more faith and credit to a *foreign officer* and a *foreign jurisdiction*, than to one of our own, known to our laws and acting under their authority. In the 8] *case before cited, Lord Ellenborough thus expresses himself: "It does not appear that any difference exists, in point of reason or law, between holding to bail, as it is practiced in the more frequent instances of affidavits in Ireland and Scotland, and of affidavits made abroad out of his majesty's dominions." Nor was the reason valid, that the party making affidavit in Canada could not be indicted for perjury. The court is not, in such case, without means of punishing the party who should attempt to impose upon them a false and fraudulent voucher of the kind. It appears from the last case cited, that although he could not be indicted for perjury, he would be answerable and punishable for a misdemeanor.

There is a case in 3 Bos. & Pul. 57, exactly in point for the defendants. A fine was allowed to pass upon the affidavit of the commissioners, for taking the acknowledgment of the party in France made before an English magistrate then in France. 2 Bun. 655; 7 Term Rep. 315; 2 Strange, 1200.

In the case of Welch *v.* Hill, 2 Johns. 373, and of Hopkins *v.* Mendenback, 5 Johns. 234, the Supreme Court of the State of New York has overruled the case of Jackson *v.* Humphreys. But the reason of the latter case does not apply to the one under consideration. Would not a judge of a territory of the United States, who should knowingly take the acknowledgment of a forged or fraudulent deed, be equally liable to impeachment, whether the act was done *within* or *without* his juridical limits? The party himself who should be guilty of such imposition, would be liable to the court for a fraudulent device.

Judge Symmes was an officer known to the people of the territory and recognized by the public laws of the United States.

He had express authority to take the acknowledgment of deeds within the territory. It can not be denied that a citizen of New Jersey could have come within the Territory, and before one of its officers make a valid acknowledgment of a deed. The case would have been widely different had the officer of the territory attempted to take an acknowledgment of a deed in New Jersey to pass lands in that state. But he was a judge of the territory: he had authority by law to take the acknowledgment of deeds for lands situate within it; and this was a personal, and not a local authority. It was in the nature of a general commission which follows the person, and not that of a judicial authority which is limited to juridical jurisdiction.

*Opinion of the court by Judge HITCHCOCK.                    [9

The plaintiff's counsel insist upon a new trial upon two grounds.

1. That the deed from Dayton to Alexander Vance having no attesting witnesses, was not valid to pass the land under the then existing laws of the territory, and ought not to have been admitted in evidence.

2. That the court rejected evidence tending to show that the letter of attorney from Dayton to Joseph Vance was acknowledged by a judge of the territory northwest of the river Ohio without his jurisdiction.

If the counsel for the plaintiff be correct upon either ground, a new trial must be granted.

When the question was first presented, the court entertained strong doubts of the validity of the deed from Dayton to Alexander Vance. The first question presented to us is, whether the ordinance of Congress of 1787 was virtually repealed by the adopted law of 1795 and of the territoral legislature ot 1802. It is very clear from the ordinance, that two witnesses are required to a deed for the conveyance of lands, and three to a will, and that these provisions remained in force until the governor and judges adopted a law upon the subject from one of the " original states." In 1795 the governor and judges of the territory adopted the law of Pennsylvania, passed in 1775, upon the subject of the " execution, proof, acknowledgment, and record of deeds." The statute is entitled " a law establishing a recorder's office;" but the eighth section expressly provides for the execution of deeds within the territory.

The first section enacts " that there shall be a recorder's office."

The second declares the effect of the word " grant," etc.

The third punishes the forgery of acknowledgments, etc.

The fourth and fifth provide for entering satisfaction of mortgages, and a penalty against the mortgagor who shall neglect to comply with the act.

The sixth and seventh point out how recorders shall be appointed, etc.

The eighth, which is the material one under consideration, enacts "that all deeds and conveyances which shall be made within this territory, of or concerning any lands, tenements, or hereditaments therein, or whereby the same may be in any wise affected, in law or equity, shall be acknowledged by one of the grantors or bargainers, or proved by one or more of the subscribing witnesses to such deed, before one of the judges of the General Court, or before one of the *justices of the Court of Common Pleas, where the lands conveyed do lie, and shall be recorded in the recorder's office where such lands or hereditaments are lying and being, within twelve months after the execution of such deeds or conveyances," etc.

From the moment this law was adopted and published, the force of the ordinance ceased, and the law became itself the rule as to the execution, acknowledgment, and proof of deeds conveying lands in the territory. Had this law remained silent as to the execution, proof, and acknowledgment of deeds, and only established a recorder's office and regulated his duties, a deed would have been void without an attestation by two witnesses; but it is a well settled rule that when a law enacts a thing to be done different from the same thing required by a former law, the first thereby becomes repealed without any direct expression of such intention by the law-making power. It surely was never intended that the ordinance of 1787 and the statute under consideration should have a concurrent efficacy. Upon general principles of universal law an old statute gives place to a new one. 1 Blac. C. 89. But it is scarcely necessary to enter into a minute discussion of the provisions of the law of 1795, as the territorial act of 1802 repealed all laws and acts coming within its purview. The third section of this act differs little from the eighth section of that of 1795, except its terms are more broad and comprehensive. The latter clause in the third section is in these words: "And all deeds and conveyances, which shall be made and executed within this territory, for the conveyance of any lands, tenements, or hereditaments situate

within the same, whereby such lands, tenements, or hereditaments shall be conveyed, affected, or incumbered, shall be acknowledged or proved and recorded."

It would be difficult, if not impossible, to express an alternative in more unequivocal terms. We are of opinion that both proof and acknowledgment of a deed, to make it a valid conveyance, are not necessary, and that by the *terms* of the act, *either* would be sufficient to admit the deed to record. The general terms of the statute, by the repeal of the law of 1795, either left the proof to the common law, the *jus gentium,* or the repealing clause did not extend to the mode prescribed by the former act. If the latter construction be correct, which is not admitted, the proof must be made by " one or more of the subscribing witnesses." The court is inclined to consider the eighth section of the law of 1795 as coming within the purview of the act of 1802. It is, however, not deemed necessary to settle the construction of this part of the statute, as the subject is not directly before the court.

*If to give the deed validity no proof by subscribing wit- **[11** nesses was necessary, it would seem naturally to follow that the act under consideration intended to dispense with their attestation; for it would be an idle and empty form to require an attestation without also requiring proof. It can not be denied, that an exemplification of a deed, legally executed and admitted to record, is good evidence in all cases; nor do the counsel for plaintiff press very strongly the proposition that under the laws of the territory of 1802, a deed could not be admitted to record until it was proved by one or more of the subscribing witnesses, *and* acknowledged. The language of the act is too clear to be misunderstood. Now admitting that at any time after the publication of the law of 1795 until the year 1805, in order to admit a domestic deed to record, it was only necessary to have it acknowledged by the grantor before the proper officer without any proof; and also that an exemplification from the records was good evidence for the grantor: it would seem to be a plain consequence that an attestation would be form without substance, a ceremony without utility. The appearance of names could never lessen the dangers of perjury; nor would they be any protection against fraudulent or clandestine conveyances. Following the construction of the court, the statutes have guarded with sufficient vigilance real estate in the territory. To the ordinary evidence of contract, the signature

and seal of the party and persons that may be present at its execution, is superadded the certificate of a sworn officer of the territory, that the grantor acknowledged in his presence the instrument to be his deed.

But it is said, in order to give validity to deeds of conveyance, almost every state in the Union requires the act to be done in the presence of witnesses who must attest their execution. It will be admitted that every sovereignty has right to prescribe rules to regulate the transfer of property with respect to real estates; the object of the statutes seems to be, to give solemnity and notoriety to the transaction, and to preserve the evidence of it. This is evident from the ceremonies observed at the feodal investiture down to the present mode of requiring attestation and acknowledgment. At first our ancestors deemed feodal donations sufficiently formal and notorious by livery of seisin without deed. 1 Coke on Litt. 490; 2 Fonb. 33. The next mode for conveying lands was by deed sealed and delivered. Neither signature nor subscribing witnesses were required until the reign of Edward IV. After that time the parties began to write their names over or near the seal. 2 Bla. 308, note. *In the reign of Henry VIII. they are signed by the parties, but not by the witnesses; but in the next reign the practice commenced for witnesses to subscribe their names. When the law-makers in this country speak of a deed it must be taken in a technical sense, as understood at common law; that is, a writing sealed and delivered by the parties. Should the legislature merely declare that lands should pass by deed, the court would have no hesitation in saying, that neither attestation nor acknowledgment would be necessary. To preserve the evidence of the transaction and give it solemnity, the legislature might require attestation and acknowledgment, or they might dispense with one or either of them.

It appears to the court, on carefully comparing the laws of 1795 and 1802, with the ordinance of Congress of 1787, that the former virtually repealed the latter, so far as respects the execution, proof, and acknowledgment of deeds; that an acknowledgment before the proper officer superseded the necessity of calling attesting witnesses; and that the deed under consideration was legally admitted to record, and operated as notice to the lessor of the plaintiff, who purchased subsequently and therefore took nothing by his deed.

If doubts existed as to the construction, we should pause before we should make a decision against a practice which is admitted to be uniform from the publication of the law of 1795, until altered by an act of the general assembly of this state in 1805. It would create irremediable mischief to disturb the settled custom of the territory as to the evidence of title; nor would the court do it, unless it was manifestly founded upon an erroneous construction of the laws in force. The provisions of a statute ought to receive such reasonable construction, if the words and subject matter will admit of it, as that the existing rights of the public or of individuals be not infringed. 2 Mass. 146. It is also a rule that they be so construed that no man who is innocent shall be endamaged. 1 Inst. 611. These liberal maxims seem fully recognized by the Supreme Court of the United States, in the case of McKeen *v.* Delancey's lessee. Chief Justice Marshall, in delivering the opinion of the court, says, "In construing a statute of a state on which land titles depend, infinite mischief would ensue should this court observe a different rule from that which had long been established in the state." The court are, therefore, of opinion that upon the first point the plaintiff is not entitled to a new trial.

2. But the counsel of the plaintiff insist that the court erred in rejecting testimony tending to show that the officer before whom *the letter of attorney from Dayton to J. Vance purported [13 to be acknowledged, was out of the territory at the time, and that the acknowledgment is consequently void; and they rely upon the case of Jackson, ex dem. Wyckoff, *v.* Humphreys, 1 Johns. 498. It might well be questioned whether the testimony, if admitted, would have availed the plaintiff; but it is the province of the jury to decide upon the effect of testimony—of the court the question of competency.

The principal reason which appears to have governed the court in that decision was, that the oath administered in Canada, by an officer of that state, was extrajudicial and void, and the witness could not be indicted for perjury in case he swore false. This reason is not applicable to the case under consideration. Judge Symmes was not entirely in a foreign jurisdiction. He was an officer of the United States; and it might admit of doubt, whether, if the fact assumed had been conclusively proved, the act of acknowledgment would not have been completely valid. It does not, however seem necessarily to follow that because the witness

could not be indicted for perjury, that therefore the oath was of no validity; for it is clear from the case cited from 8 East, 322, that although the witness could not be indicted for perjury he could be made answerable for a misdemeanor, and therefore the oath was neither "extrajudicial," nor "void." This court pays great respect to the cases adjudged by the Supreme Court of New York; but when by chance we find one against the current of authorities, we must pause before we adopt it as settled law. We find, by two subsequent adjudications of the same court, the case of Jackson *v.* Humphreys substantially overruled, and we are rather inclined to adopt the latter decisions. The court think the last adjudged cases are more liberal and consonant to reason; for it would be strange, indeed, for a court to give more credit to a foreign officer and an alien than one of our own citizens, clothed with authority by our own laws. It would require no ordinary effort to reconcile these decisions.

Independent of this, that was matter of proof in which might be involved a serious question under the criminal laws of New York; here no such question can possibly arise. It is presumed that a judge taking the acknowledgment of a deed for fraudulent purposes or knowing it to be forged, within his particular jurisdiction, or another state, would, in either case, subject himself to the same punishment; and it is equally certain that one who, by fraudulent devices or forgery, should procure an acknowledgment, whether *in or out of the territory*, would be equally liable to punishment.

14] *There appears some force in the remark, that a judge empowered to take the acknowledgment of deeds rather acts as a general commissioner of the law than in a judicial capacity; and that this is an authority which accompanies his person and is not limited and confined to juridical jurisdiction. Be this as it may, we are inclined to the opinion that one of the judges of the United States empowered by law to take the acknowledgment of deeds conveying lands, may, in any part of the Union, take such acknowledgments, not to affect lands in a foreign jurisdiction, but in the territory over which his powers extend.

Let judgment be entered on the verdict.