## Peter Dilts et ux., Plffs. in Err., v. A. M. Stewart.

The father of a daughter who was married made a deed of land to the daughter's husband as grantee, saying that he intended the land as a gift to the daughter. The husband declared that the land should be his wife's, but also said that unless he got the land in his own name he did not wish it. He afterwards called the land his wife's. These facts were held not sufficient to raise a resulting trust in favor of the wife.

(Decided November 2, 1885.)

Error to the Common Pleas of Indiana County to review a judgment in ejectment for plaintiff. Affirmed.

Ejectment by Stewart to recover possession of a certain piece of land. The land in question originally belonged to John Ewing, who, in dividing his land among his children, conveyed this land to Peter Dilts, the husband of his daughter, Mary Dilts, in consideration of "the sum of $1, and also the love and natural affection which they have for the said Peter Dilts, their son-in-law, and Mary Dilts, wife of said Peter Dilts, daughter of said John and Lettice Ewing."

Stewart claimed the land as purchaser at sheriff's sale under a judgment and execution against Peter Dilts.

On the trial, the defendant contended that the land having been given by John Ewing to his daughter, Mrs. Dilts, in 1862,

Cited in Hiltner v. Hiltner, 4 Montg. Co. L. Rep. 141, and in Robinson v. Robinson, 7 Montg. Co. L. Rep. 215.

NOTE.—See notes to Ackley v. Ackley, *ante*, 138, and Longdon v. Clouse, *ante*, 178.

As to creation of resulting trust, see editorial note to Hinton v. Pritchard, 10 L. R. A. 401.

she having taken possession and kept it, having the land culti-vated and notoriously claimed by her; that Peter Dilts never having paid anything for it; that the mention of natural love and affection he bore his daughter, in the deed, being the real consideration for John Ewing making the conveyance, together with the repeated declaration of John Ewing before he made the deed, that he had given the land to Polly; that at the very time he was signing the deed he said "he was giving this to Polly, not to Peter;" that John Ewing before he signed the deed said to Peter, "I give this to Polly; I want Polly to have it," when Peter replied, "I know that; it is Polly's and it shall be Polly's,"—made Peter Dilts but a trustee for his wife of the legal title to the land. That, under the circumstances, if the facts were believed, a trust resulted to Mrs. Dilts after her father made the deed to Peter Dilts. That it was Peter's duty, if necessary to fulfil his promise to John Ewing before the deed was made, that the land was "Polly's and should be Polly's," to have executed a deed of trust or have done whatever was necessary to secure it to her. That, failing to execute such a pa-per, he became a trustee *ex maleficio.* Defendant contended, further, that, if the deed was made in the trust and confidence, that it was Mrs. Dilts' and would be hers, and that Peter would do whatever was necessary to secure it to her, and, upon Peter refusing or neglecting to fulfil his promise and obligation by doing what was necessary to secure it to her, a court of equity would enforce this trust; and here the necessary conveyance will be considered as having been actually made whenever it ought to have been made.

The court directed a verdict for plaintiff, and defendant brought error.

*Harry White* and *H. W. Weir* for plaintiffs in error.—"Where an estate is invested in another by will, and at the time of the creation of the estate the devise is agreed to be received, and is accepted for the use of another person, . . . a valid trust for such other person will be supported and recognized in law, even though it is all dependent upon parol or verbal testimony."

This case was not within act of April 22, 1856, § 4.

It is well settled that, if one be induced to confide in the promise of another, that he will hold in trust and that he will so purchase for one or both, and is thus led to do what otherwise

he would have forborne, or to forbear what he contemplated to do in the acquisition of an estate, whereby the promisor becomes the holder of the legal title, an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee *ex maleficio.* Morey v. Herrick, 18 Pa. 128. See also Thomson v. White, 1 Dall. 424, 1 L. ed. 206, 1 Am. Dec. 252; Harvey v. Harvey, 2 Ch. Cas. 82; Hampton v. Spencer, 2 Vern. 288; Thynn v. Thynn, 1 Vern. 296; Rupp's Appeal, 12 W. N. C. 138.

*A. W. Taylor* and *J. N. Banks,* for defendant in error.—In the case of Ballard v. Ward, 89 Pa. 358, it is held that "possession delivered or taken in pursuance of a parol gift is not sufficient to take it out of the operation of the statute of frauds; besides such possession, there must be improvements not capable of compensation in damages." And in Miller v. Hartle, 53 Pa. 108, THOMPSON, J., in delivering the opinion of the court, says: "The clearest evidence of a present gift, accompanied by exclusive possession and valuable improvements not to be compensated in damages, is necessary to establish such a parol gift as equity will execute between father and son."

In Barnet v. Dougherty, 32 Pa. 371, STRONG, J., delivering the opinion of the court, says: "A resulting trust, however, is raised only from fraud in obtaining the title, or from payment of the purchase money when the title is acquired. Payment of the purchase money subsequently is not sufficient to raise a legal implication of a trust, as all authorities show. . . . Subsequent fraud, if any exists, no more raises a trust than does subsequent payment of the purchase money."

That a resulting trust in land must arise, if at all, at the inception of the title, either through fraud in the acquisition of the title, or through payment of the purchase money by which it is obtained, is well settled by numerous authorities, among which are Cross's Appeal, 97 Pa. 471; Bickel's Appeal, 86 Pa. 204.

OPINION BY MR. JUSTICE TRUNKEY:

When John Ewing divided his land in 1862, he intended to give a part to each of his children. Mary Dilts took such possession of the land intended for her as, under usual circumstances, a married woman is capable of taking; claimed it; her

husband occupied it as he did his own, and called it hers; but neither put valuable improvements thereon before the sheriff's sale. Peter Dilts had his attorney write the deed, then took it to his father-in-law, John Ewing, who after examination said, "I give this to Polly; I want Polly to have it;" and Dilts replied, "I know you did; it is Polly's, and it shall be Polly's." They had little other conversation about it, and Dilts thought Ewing did not like the way the deed was written.

William Crawford testifies that he had a conversation with John Ewing respecting the deed: "When he first signed the deed, he said it was not what he intended to do; he allowed this for Polly; he allowed to make the deed for Polly; he did not like to sign the deed in this way, he said; and Peter said to him he allowed it for Polly and it would make little difference, or something to that amount. Peter got a little irritated, and said if he did not get it in his name he did not want it at all, and went out of the house." "Peter said he intended it for Polly."

That conversation was before the deed was executed. Thomas H. Ewing, one of the subscribing witnesses, testifies that when his father went to sign the deed he says, "It is Polly, not Peter, I am giving this to."

The consideration for the deed was natural love and affection. Peter Dilts was not present when the deed was signed and acknowledged; nor is there testimony that at the time of delivery of the deed anything was said by either grantor or grantee.

If the ruling of the learned judge of the common pleas needs vindication, none better can be made than noting the testimony and reading § 4 of the act of April 22, 1856, which requires all declarations or creations of trust to be manifested by writing, signed by the party holding the title thereof.

Ewing had intended to convey the land in controversy to Mary Dilts. Peter Dilts wanted it conveyed to himself, had the deed so prepared, gave it to Ewing, did not talk much, made no promises, and after "quite a while" Ewing executed and delivered the deed. There can be no resulting trust arising from the payment of purchase money where none is paid. Natural love and affection is a good consideration for a deed; and when that is the consideration, such fact would be considered with others, if there were others, tending to establish a resulting trust; but alone it is insufficient.

The grantor knew that Peter Dilts wanted the title to him-

self. Had Dilts persuaded and induced his father-in-law to make the deed to him by a promise to hold it in trust for his wife and to convey or devise it to her, there would be some cause for holding him a trustee *ex maleficio.* Then, indeed, the doctrine in Church v. Ruland, 64 Pa. 432, might apply. There the devisee promised the testator that, if he would give her the land in fee, on her death one half of it should go to the children of her sister Charlotte. The will was so made on the faith of her promise, and good faith on her part required performance. It was very different from the declaration of the grantor in absence of the grantee, when the grantee had previously merely said: "The land is Polly's; it shall be Polly's; I intend it for Polly, too," and added that, if he did not get it in his own name he did not want it at all. The expression of an intention is not a promise. Insisting that a deed shall be made to himself involves no deceit by the grantee.

There is nothing in this case to defeat the title of the purchaser at sheriff's sale.

Judgment affirmed.