MCQUAIDE, ADMINISTRATRIX, *v.* MCQUAIDE ET AL.

[No. 13,469. Filed October 25, 1929. Rehearing denied March 12, 1930. Transfer denied April 16, 1931.]

*Hamill, Hickey & Harris* and *Frank Hamilton*, for appellant.

*C. A. Royse*, for appellees.

NEAL, J.—This appeal involves two cases filed below to quiet title. Arthur R. Graham instituted proceedings to quiet his title to the east half of the east half of the southwest quarter of section 35, township 13 north, range 9 west, and Clara Baumgartner instituted a like proceeding as to the west half thereof. The chain of title in each case was the same, except that the Baumgartners had recently conveyed the east 40 acres to Graham. Pearl A. McQuaide, as administratrix, was made a party defendant on her petition, and filed a cross-complaint in each case. The issues were closed by answers in general denial to the complaints and cross-complaints. The trial court consolidated the two cases, heard the evidence, made a special finding of facts, stated its conclusions of law thereon, and rendered judgment in favor of appellees Graham and Baumgartners, quieting their respective titles to the two tracts, and against the appellant on her cross-complaint. The errors, if any, arise on the separate exceptions to the several conclusions of law.

We shall narrate the salient facts of the special finding: Rachel J. Compton, for over 18 years prior to January, 1913, was the owner of the real estate above described; at her death, title to the real estate so owned by her vested in the appellant Clara Baumgartner, daughter of Rachel J. Compton, and her father, James E. Compton; on May 13, 1913, Clara Baumgartner, her husband joining therein, sold and conveyed all of her interest in and to the above-described 80-acre tract to her father without consideration.

James E. Compton, at the age of 76 years, was remarried to one Cora Hannah, who, by a former marriage, had one child, named Pearl; the daughter married one William A. McQuaide, and she and her husband are named defendants (appellees herein), and Pearl A. McQuaide was appointed administratrix *de bonis non* of the estate of her mother, Cora E. Barker, and is the same person in her representative capacity who filed a cross-complaint in this action (and prosecutes this appeal as the appellant). In the year 1921, James E. Compton, his wife joining therein, sold and conveyed the same 80 acres to Arthur R. and Florence B. Morris by warranty deed, and the grantees entered into the possession thereof.

James E. Compton and Cora E. Compton, after the conveyance of the 80 acres to Morris and wife, sought to set aside their deed and recover the real estate, and, for that purpose, began an action against Morris, which action was venued to the circuit court of Sullivan County; while the action was pending, William A. McQuaide, who was then the son-in-law of Cora E. Compton, offered to James E. Compton and Clara Baumgartner that he would assist in securing a settlement of the litigation and a reconveyance of the real estate on the following plan: A sum of money was to be raised to discharge a mortgage encumbrance of approximately $900 on a house and lot in North Terre Haute, then owned by James E. Compton; to pay attorney fees and other expenses of the litigation, all debts of James E. Compton, and to secure a reconveyance from Morris and wife of the 80-acre tract; Clara Baumgartner and husband were to furnish one-half of the sum so required and William A. McQuaide was to provide the other half thereof in behalf of Cora E. Compton; when the 80-acre tract was recovered from Morris and wife, all the property, including the property in North Terre Haute, should be divided equally between Clara Baumgartner, the

daughter of James E. Compton, and Cora E. Compton, his wife. The plan was accepted by all parties. In pursuance to the plans, James E. Compton and Cora E. Compton gave to William A. McQuaide a written authority to settle the litigation. William McQuaide did secure a settlement thereof and a reconveyance from Morris and wife of the 80-acre tract, and, in order to do so, paid to Arthur R. Morris $1,020 on account of improvements erected by Morris on the real estate; also paid the attorney fees, together with the costs and other expenses of the litigation, in excess of $1,000, and discharged the mortgage encumbrances on the North Terre Haute property and other indebtedness of James E. Compton. One-half of the sum of money so required, between $1,700 and $1,800, was furnished by Clara Baumgartner and her husband, and the other half by William A. McQuaide. Thereupon, the 80-acre tract was reconveyed by Morris and wife to James E. Compton and wife, who conveyed the same to Clara Baumgartner, and Clara Baumgartner and husband conveyed the east half of the 80 acres to Cora E. Compton. Clara Baumgartner took possession of the west half of the east half of the southwest quarter and is now in possession thereof. Cora E. Compton also took possession of the east 40 acres under and pursuant to her deed from Clara Baumgartner.

James E. Compton deceased in April, 1923; he left surviving at his death his second wife, Cora E. Compton, and his daughter, Clara Baumgartner, and the wife and daughter were his only heirs.

In October, 1923, Cora E. Compton, single, sold and conveyed to Clara Baumgartner the east 40 acres subject to a mortgage in favor of the Prudential Life Insurance Company, and the grantee took possession of the real estate. The aforesaid conveyance was negotiated by William A. McQuaide, and the agreed purchase price was

$12,000, from which was to be deducted one-half of the mortgage of $5,000 on the whole 80 acres, leaving a balance to be paid of $9,500. The grantee did not pay the purchase price in cash, but, in payment thereof, executed and delivered to William A. McQuaide four or five promissory notes signed by Clara Baumgartner and John L. Baumgartner, her husband, payable to the order of William A. McQuaide, all dated October 18, 1923, and payable two years after date, with interest thereon at the rate of six per cent per annum, payable at McKeen National Bank of Terre Haute, Indiana. The notes are now past due and unpaid. Simultaneously with the execution of the notes, Clara Baumgartner and her husband executed and delivered to William A. McQuaide a certain instrument in the form of an affidavit, which instrument was of the tenor as follows: That Clara and John L. Baumgartner would execute to William A. McQuaide a mortgage on the east half of the southwest quarter of section 35, township 13 north, range 8 west, in Vigo County, upon demand, to secure the payment of notes in the sum of $9,500, dated October 18, 1923, payable two years after date, with six per cent interest, at McKeen's bank; that said notes were given to secure purchase money to buy a part of the above-described real estate; that no other mortgages were to be executed against the real estate except to W. A. McQuaide for $9,500.

At the time of the conveyance of the east 40 acres by Cora E. Compton to Clara Baumgartner, she was living with her daughter, Pearl A. McQuaide. The notes, in the sum of $9,500, and the affidavit heretofore referred to, were written out and prepared for execution by Pearl A. McQuaide at her residence and in the presence of William A. McQuaide and Cora E. Compton, at their direction and request. Cora E. Compton directed that the promissory notes be made payable to the order of

William A. McQuaide, and the instrument in form of an affidavit to be made to him. The notes and affidavit were executed and delivered to William A. McQuaide in the presence of Cora E. Compton and with her knowledge and consent.

William A. McQuaide was married to Pearl A. McQuaide on December 1, 1915; they resided in Vigo County, and to this union two children were born, namely Mildred Margaret and William Lloyd, now 10 and eight years of age respectively, and they are the same persons named as defendants (appellees) herein. After the marriage, William A. McQuaide was absent most of the time. He owned five or six parcels of rental property in or near Terre Haute, but was engaged in business somewhere in the south. McQuaide returned to Terre Haute from time to time to see his family and look after his property. After his marriage, and until May, 1924, his mother-in-law, Cora E. Compton, in his absence, was the agent of McQuaides in the management of his property, collected the rents therefor, made repairs, paid taxes, insurance premiums, etc. McQuaide made, executed and delivered deeds conveying his rental properties to Cora E. Compton, which deeds were held by her unrecorded until after the last visit of McQuaide in May, 1924, at which time she caused the deeds to be recorded, but paid no consideration therefor. Since May 5, 1924, William McQuaide has never returned, and, since said day, his wife and children have received no knowledge or information as to his whereabouts and his present whereabouts is unknown. In May, 1925, Pearl A. McQuaide was granted a divorce from her husband, William A. McQuaide.

After the death of James E. Compton, and in April, 1925, his widow, Cora E. Compton, married one Charles Barker. The following year, Cora Barker deceased, and left surviving her as her only heirs at law her husband,

Charles Barker, and daughter, Pearl A. McQuaide. Charles Barker was first appointed administrator of the estate of Cora E. Barker. The two heirs made a division of the property inherited from Cora E. Barker. Charles Barker resigned as administrator, and Pearl A. McQuaide was appointed administratrix *de bonis non*, and made a final report in settlement of the estate. In the administration of the estate, the promissory notes executed by appellee Baumgartner to William A. McQuaide were not included in the inventory or report, and no attempt was made to administer thereon. In May, 1927, Pearl A. McQuaide was appointed administratrix *de bonis non* of the estate of Cora E. Barker, deceased.

In May, 1926, Clara Baumgartner and one Arthur R. Graham entered into a written contract for the sale and purchase of the east 40 acres owned by Clara Baumgartner, and which had been conveyed to her by Cora E. Compton. The consideration was $300 per acre, to be paid in the following manner: $100 at the time of the execution of the contract; $400 upon the approval of the abstract; $3,000 June 1, 1926, and the balance, to wit: $10,500 on July 1, 1926. The purchaser, Graham, complied with the terms of the contract, and a deed conveying the real estate was delivered to him on the day of the last payment of the purchase price.

After the contract of sale had been made between Clara Baumgartner and Arthur R. Graham, Pearl A. McQuaide learned of the transaction. She was, at the time, the divorced wife of William A. McQuaide. She made a search among the papers and effects of her former husband, William, which had been left in the house at the time of his last visit in May, 1924. As a result of the search, she found among such papers an instrument in the form of an affidavit executed by Clara Baumgartner, but was unable to find the notes given by Clara Baumgartner and her husband which have heretofore been

described. Pearl A. McQuaide requested Clara Baumgartner to deposit in the bank to the credit of William A. McQuaide, or his heirs, from the proceeds of the proposed sale to Graham, a sum sufficient to pay the notes, which request was refused. Thereupon, Pearl A. McQuaide caused the affidavit made by Clara Baumgartner, heretofore described, to be recorded in the recorder's office of Vigo County.

Arthur R. Graham had fully paid for the real estate so purchased by him, and had received the deed therefor and recorded the same, when he learned for the first time that the affidavit of Clara Baumgartner had been recorded. He had no knowledge or information of any kind until after the purchase of the real estate had been completed and the deed delivered that Clara Baumgartner and husband had executed notes in connection with their purchase of the real estate, neither did he have any knowledge or information that any purchase money was due or remained unpaid, or that William A. McQuaide or any other person had or claimed to have an interest in the real estate or any lien or claim thereon adverse to the title of Clara Baumgartner.

When Graham became advised of the recording of the affidavit executed by Clara Baumgartner and caused to be recorded by Pearl McQuaide, he demanded of Clara Baumgartner that they should cause any cloud on the title to the land so conveyed to him to be removed and his title to the land be quieted and set at rest as against all claims and demands of William A. McQuaide or any other person making adverse claims thereto, and further, that they give satisfactory security that such title be so quieted, and, in addition thereto, they deposit with a trust company the sum of $12,000 to be held as security for the performance of such an agreement.

Pursuant to the demand of Graham, Clara Baumgartner and husband, Arthur R. Graham, and the Terre

Haute Trust Company, as trustee, entered into a certain trust agreement. The terms and conditions of the written agreement are substantially as follows: That Clara Baumgartner shall pay to and deposit with and has paid to and deposited with the Terre Haute Trust Company the sum of $12,000, to be held, applied and disposed of by said trustee on certain trusts as follows: (a) that the trust company shall pay interest on said trust fund as long as the trust shall continue; (b) that Clara Baumgartner and her husband shall immediately begin and prosecute to final judgment an action against W. A. McQuaide, his heirs, executors and assigns, and will cause the pretended lien or encumbrance on the 80-acre tract occasioned by the recording of the affidavit heretofore mentioned to be canceled and removed, and the title of Graham to the east half of said tract and of Clara Baumgartner to the west half to be fully quieted, and pay all expenses incident thereto; (c) that, in case the notes mentioned in the affidavit shall be presented for payment and payment thereof shall be demanded by W. A. McQuaide or his legal representatives prior to the termination of the trust, the trustee is authorized and empowered, and the trustee agrees, to apply and pay over so much of the trust fund as shall be necessary to pay and discharge the notes with interest. It was expressly stipulated in the agreement that the trust fund is created for the sole purpose of giving full and ample security to Graham and the Terre Haute Trust Company, who agreed to loan the Baumgartners $3,500 on the west 40, against any claim or demand which may be made under and by virtue of the affidavit and for the purpose of securing the removal of any cloud on the 80 acres by reason thereof, and the quieting of the title to said tract of land by reason of said instrument. Further, that the instrument and the trust created are not intended to

create any security whatever for the payment of the notes mentioned in said instrument.

After the execution of the trust agreement, Arthur R. Graham began an action to quiet his title to the land so conveyed to him, and Clara Baumgartner began a like action to quiet the title to the land held by her, and in each of said actions, William A. McQuaide and his two children were named as defendants. In each of said actions, Pearl A. McQuaide employed attorneys, and caused Chester Kelley to be appointed guardian *ad litem* for the minor defendants. The guardian *ad litem* filed an answer in three paragraphs, the first and third being affirmative answers and the second a general denial. The affirmative answers alleged that the minor defendants, children of W. A. McQuaide, had an interest in the real estate through their father and as heirs or prospective heirs of their father. Demurrers were sustained to the first and third paragraphs of answer. Pearl A. McQuaide, individually, on her petition, was made a defendant in each of the causes of action and filed a cross-complaint in each of the same, seeking to assert some right or interest in the real estate as the divorced wife of William A. McQuaide and by reason of the obligation of William A. McQuaide to support his minor children and a demurrer to the cross-complaint was sustained.

The court found that Clara Baumgartner and John L. Baumgartner executed the notes in the sum of $9,500, payable to William McQuaide at the McKeen National Bank of Terre Haute, Indiana, and that the notes were accepted by the payee with the understanding and intention that they should be in full payment for the land so purchased, and no lien on said land was created and retained at the time of the transaction.

The court stated its conclusions of law, 10 in number. Appellant Pearl A. McQuaide in her brief specifically

challenges the third, fourth, fifth, eighth, ninth and tenth conclusions of law; the third, fourth and fifth are as follows: (3) "That the title of said Arthur R. Graham in and to said real estate should be quieted and set at rest as against all claims and demands of the defendants in said action, and each of them, and all persons claiming by, through or under them, and that said named defendants be perpetually enjoined from claiming or asserting any right or interest in said real estate"; (4) "that Pearl A. McQuaide, as administratrix *de bonis-non* of the estate of Cora E. Barker, deceased, cross-complainant in said action, has no right, title or interest in and to the real estate described therein, or in or to the notes executed by Clara Baumgartner and John L. Baumgartner referred to therein and is not entitled to recover on her cross-complaint against said Clara Baumgartner and John L. Baumgartner"; (5) "that Pearl A. McQuaide, as administratrix, has no right, title and interest in and to the sum of $12,000 held by the Terre Haute Trust Company under a trust agreement as shown in the findings, and is not entitled to recover on said cross-complaint against the Terre Haute Trust Company."

The eighth conclusion of law is identical with the third, except the name of Clara Baumgartner appears therein in place of the name of Arthur R. Graham. The ninth and tenth conclusions are the same as the fourth and fifth.

The cross-complaint of Pearl A. McQuaide alleges, in substance: That, on October 18, 1923, Cora E. Compton, afterwards Cora E. Barker, was the owner of the east half of the east half of the southwest quarter of section 35, township 13, north, range 9 west; that, on the same day, she sold and conveyed the land to Clara Baumgartner for $9,500; that in making the sale, William A. McQuaide acted as her agent; that Clara Baumgartner did not pay cash for the land, but gave notes signed

by her and John L. Baumgartner and a written agreement to give a mortgage on the whole of the east half of the quarter section; that said notes and written agreement were taken in the name of William A. McQuaide; that Cora E. Compton, after the death of her husband, married Charles Barker and then died intestate; that Cora E. Compton's estate was settled without taking into consideration the said $9,500 in notes; that Clara Baumgartner sold the land purchased from Cora E. Compton to the plaintiff Arthur R. Graham; that letters of administration *de bonis non* on the estate of Cora E. (Compton) Barker were issued to appellant for the purpose of administering upon the omitted assets; that the purchase price of Graham, to wit, $12,000, was placed with the Terre Haute Trust Company under an agreement to pay the notes. The prayer thereof was to the effect that she, as administratrix, be adjudged the owner of the notes and the proceeds thereof; that she have judgment against Clara and John L. Baumgartner on the notes in the sum of $11,972.50; that she have judgment against the Terre Haute Trust Company in the sum of $12,000, and that the sums of money be declared a lien on the lands described in the affidavit and judgment for the foreclosure of the lien.

It is the contention of appellant "that the promissory notes executed by Baumgartners, having been given for the purchase price of Cora E. Compton Barker's land, they belonged to her, although taken in the name of McQuaide, and, being a subsisting obligation at the time of her death, her administratrix is entitled to recover thereon."

The court found as a fact that the notes and affidavit were written out and prepared for execution by Pearl A. McQuaide, daughter of Cora E. Compton, at the residence of Pearl A. McQuaide and her mother; that Cora E. Compton directed that the notes be made pay-

able to the order of William A. McQuaide, and the instrument in the form of an affidavit be made to him; that, thereafter, the notes and affidavit were signed and delivered to William A. McQuaide in the presence of Cora E. Compton and with her knowledge and consent. It will be observed that no reservation of any kind was attached to the delivery of the promissory notes to McQuaide.

In order for appellant to prevail on this appeal, it is necessary that the facts found by the court lead to the inevitable conclusion that an implied trust was created, and that McQuaide held the promissory notes for the use and benefit of Cora E. Compton and no other person.

It is undoubtedly the law, in the absence of statutory restrictions, "that where, upon a purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration or a part of it is given or paid by another, not in the way of a loan to the grantee, the parties being strangers to each other, a resulting trust immediately arises from the transaction (unless it would be enforcing a fraud to raise a resulting trust), and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds." 1 Perry, Trust and Trustees (7th ed.) §126. See, also, 39 Cyc. 119; 26 R. C. L. 1219, and the many authorities therein cited. As to the statutory restrictions, see §§13447-13449 Burns 1926. *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877.

It is also true that the above principle of law applies to personal property as well as to real estate, and the person paying the purchase price holds the equitable interest therein. *Creed* v. *Lancaster Bank* (1852), 1 Ohio 1; *Guphill* v. *Isbell* (1829), 1 Baily (S. C.) 230, 19 Am. Dec. 675; *Kelley* v. *Jenness* (1862), 50 Me. 455, 79 Am. Dec. 623; *McClung* v. *Colwell* (1901), 107 Tenn. 592, 64 S. W. 890, 89 Am. St. 961; 26 R. C. L. 1220, §64; Perry, Trust

and Trustees (7th ed.) §§62, 201. See *Thornburg, Admr.,* v. *Buck* (1885), 13 Ind. App. 446, 41 N. E. 85; *Woods, Exr.,* v. *Matlock* (1897), 19 Ind. App. 364, 48 N. E. 384; *Hunt* v. *Elliott* (1881), 80 Ind. 245, 41 Am. Rep. 794; *Mohn* v. *Mohn* (1887), 112 Ind. 285, 13 N. E. 859. See *Ducie* v. *Ford* (1891), 138 U. S. 587, 11 Sup. Ct. 417, 34 L. Ed. 1092.

Further, it has been held that statutes which have been passed by the several states providing that, where real property is purchased in the name of one person and the consideration is paid by another and no trust is presumed to result, do not apply to personal property. *Tobin* v. *Tobin* (1909), 139 Wis. 494, 121 N. W. 144; *Gilman, Admr.,* v. *McArdle* (1885), 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41; *Baker* v. *Terrell* (1863), 8 Minn. 195; *Hanrion* v. *Hanrion* (1906), 73 Kans. 25, 84 Pac. 381, 117 Am. St. 453.

In determining whether a given state of facts constitute a resulting trust in personal property, we must also be cognizant of a well-established rule of law that the proof thereof must be clear and convincing, and that, while certain presumptions of law and fact prevail, nevertheless the burden of proof of the whole case rests upon the one who seeks to establish a resulting trust. Perry, Trust and Trustees (7th ed.) §139, p. 223.

The law is that, if one person purchases an estate and pays the consideration therefor, and places the legal title thereof in the name of a wife or child or other person for whom he is under some natural, moral or legal obligation to provide, the presumption of a resulting trust is rebutted, and the contrary presumption arises that the purchase and conveyance was intended as an advancement or gift for the nominal purchaser. In some of the adjudicated cases, this rule has been applied where the nominal grantee is a son-in-law.

*Baker* v. *Leathers* (1852), 3 Ind. 558; *Lewis* v. *Stanley* (1897), 148 Ind. 351, 45 N. E. 693, 47 N. E. 677; *Meredith* v. *Meredith* (1898), 150 Ind. 299, 50 N. E. 29. See *Acker* v. *Priest* (1894), 92 Iowa 610, 61 N. W. 235; *Braden* v. *Workman* (1885), 1 Sad. (Pa. Sup.) 224, 1 Atl. 655; *Dilts* v. *Stewart* (1885), 1 Sad. (Pa. Sup.) 230, 1 Atl. 587; *Heath, Admr.*, v. *Carter* (1898), 20 Ind. App. 83, 50 N. E. 318; *Neill* v. *Keese* (1849), 5 Texas 23, 51 Am. Dec. 747, and notes and authorities cited; *Cole* v. *Thompson* (1909), 169 Fed. 729; 26 R. C. L. 1229.

Appellant, in his reply brief, says, quoting from 39 Cyc. 148: "It is an established rule of equity that where trust and confidence are reposed by one party in another, and the latter accepts the confidence or trust, equity will convert him into a trustee, whenever it is necessary to protect the interest of the party so confiding and do justice between them." Appellant would have us declare as a matter of law that the facts found by the court create a constructive trust under this rule. It is necessary, however, in order for appellant to prevail on the theory of a constructive trust, that the facts found are sufficient to show actual or constructive fraud. *Betsner* v. *Betsner* (1926), 84 Ind. App. 319, 151 N. E. 343.

In this case, the real estate involved had belonged to Rachel Compton for 18 years. At her death, in the year of 1913, the fee-simple title to the real estate descended, one-third to her husband, James Compton, and the two-thirds to her daughter, Clara Baumgartner. Clara, without consideration, deeded the two-thirds thereof to her father. When James Compton was near 80 years of age, he made a conveyance of the real estate to Morris and wife; dissatisfied with the conveyance, the real estate was recovered through the joint efforts of William A. Mc-

Quaide and Clara Baumgartner. In order to secure a reconveyance of the 80-acre tract, McQuaide paid for the benefit of his mother-in-law, Cora Hannah, who has married James Compton, between $1,700, and $1,800. The title to the west 40, after the reconveyance, rested in Clara Baumgartner, and of the east 40 in Cora Hannah Compton, a childless second wife. After the death of James Compton, the widow took up her residence with McQuaide and wife; for years, Cora Compton was the agent of said McQuaide in the management of his properties, collected the rents therefor, made repairs, paid taxes and insurance premiums, and had numerous business dealings with him; William A. McQuaide executed and delivered deeds conveying the several properties so owned by him to his mother-in-law, Cora Compton, which were not recorded by the mother-in-law until after McQuaide's last visit in May, 1924, and paid no consideration therefor; the notes so given by Clara Baumgartner for the purchase price of the east 40 were written, signed and delivered to McQuaide, in the presence of Cora Compton, Pearl McQuaide and William McQuaide, all of which was done at the request and direction of Cora Compton. Cora Compton did not, prior to her death, so far as the findings disclose, ever assert ownership to the promissory notes so given to McQuaide. In this connection, the findings recite that, after McQuaide left the state, Cora Compton married one Barker. The special finding fails to establish the ultimate fact of a trust, either resulting or constructive.

In order for the appellant to prevail, it is necessary that her mother, Cora Compton, shall have had an equitable interest in the promissory notes. This, the facts fail to disclose, and all subsequent proceedings in the sale of the east 40 are foreign to the appellant.

Judgment affirmed.