LAUER *v.* RAKER.

[No. 18,916. Filed November 21, 1957. Rehearing denied January 10, 1958. Transfer denied February 20, 1958.]

*Hogg & Peters* and *Richard I. Snouffer,* both of Fort Wayne, for appellant.

*James P. Murphy* and *Frederick A. Beckman,* both of Fort Wayne, for appellee.

CRUMPACKER, C. J.—This controversy has its origin in the following undisputed facts: On April 18, 1952, in response to an advertisement by the appellee Myron E. Raker offering real estate for sale at 4635 Old Mill Road, Fort Wayne, Indiana, Arnold Hirschberg telephoned the appellee for an appointment to inspect the property and, with his wife, met the appellee on the premises about 10:30 A. M. of that day. Hirschberg asked the appellee if he would consider an offer of $38,500 for the property and the appellee said he would. Mrs. Hirschberg then said that before anything was decided in the matter she would like to have her father, the appellant Marc S. Lauer, look at the property. That was agreeable to the appellee and Hirschberg telephoned the appellant whereby it was arranged for him to meet the appellee and the Hirschbergs on the property involved at 3:00 P. M. on that day, to-wit, April 18, 1952. Appellee arrived at the time set and found the appellant, his wife and Mrs. Hirschberg already there. Hirschberg arrived 15 to 20 minutes later. After the appellant, his wife and the Hirschbergs had inspected the house and grounds, Hirschberg asked his wife if she was satisfied with the property and she replied in the affirmative. The appellee then stated to the appellant that he had tentatively agreed to sell the place to the Hirschbergs for $38,500. The appellant said the Hirschbergs would have to sell their present house before they could finance the purchase of this one but that he would help them with the deal by making a down payment of $5,000. It was agreed that 60 days would be sufficient time to enable the Hirschbergs to raise the balance of the purchase money but in the event the Hirschbergs could not sell their

house within that time the appellee agreed to carry $10,000 to $15,000 for an additional 60 days at no interest. The Hirschbergs, it was agreed, were to have possession of the property upon completion of the transaction, the appellee was to pay the taxes payable in 1952, and the deed was to be made to the Hirschbergs as tenants by the entireties. Having arrived at this understanding the appellant made out and delivered to the appellee his check No. 158 drawn on the Marshall County Trust and Savings Company for $5,000 payable to the order of M. E. Raker. In the lower lefthand corner on the face of said check the appellant wrote the words "For payment on home 4635 Old Mill Road, Ft. Wayne, Ind. at $38,500." The appellee thereupon made out and delivered to the appellant the following receipt:

"April 18, 1952
"Received of M. S. Lauer. ————— $5,000.00 Five Thousand and no/100 Dollars Payment on home at 4635 Old Mill Road Selling price $38500.00 Bal. due $33,500.00 on or before June 18th, 1952. If Purchaser is short $10,000.00 or $15,00.00 at settlement, I agree to carry same for this amount for an additional 60 days.
M. E. Raker."

After the exchange of the check and the receipt above described the appellee delivered the keys to the house to Hirschbergs and the parties left the premises. About April 27, 1952, Hischberg told the appellee that his wife had just returned from a sanitarium and had decided that she did not want the Old Mill Road house and therefore he did not want to proceed further with the transaction. Appellee stated that he could not release the Hirschbergs from the terms of the agreement but would help them to sell the house to someone else. Hirschberg said that if the appellee could sell the house to another person, who had theretofore offered $37,500

for it, to do so and that he would take the $1,000 loss. That night the appellee called the appellant by telephone and told him of the turn of events just described. During the course of this conversation the appellant told the appellee to handle the matter with the Hirschbergs as he, the appellant, wanted nothing more to do with it. On May 16, 1952, the appellee wrote a letter to the appellant advising him as to what had been done to resell the property and confirming his statements to Hirschberg concerning such resale. He continued trying to sell the property for the Hirschbergs but was unable to secure an offer satisfactory to them.

By letter dated June 11, 1952, the appellee, through his attorney, notified the appellant that the abstract of title to the property involved was ready for examination and that the appellee and his wife would be in a position to close the transaction on June 18, 1952. Neither the appellant nor Hirschberg made any further attempt to complete the deal and eventually the appellee sold the property to another for $32,000.

On this factual background the appellant concluded that he was entitled to the return of the down payment he had made toward the purchase of the house and he sued the appellee for money had and received in the sum of $5,000. The appellee answered in three paragraphs, the first of which was by way of admission and denial under the rules. The second pleaded a contract to purchase real estate breached by the appellant who thereby estopped himself from recovery on his complaint. The third pleaded a contract to purchase real estate which the appellant breached and thereby forfeited his right to recover the down payment he had made. There was a trial to the Noble Circuit Court and a finding and judgment against the appellant on his complaint and for the appellee on the second and third paragraphs of his answer.

The appellant contends that such judgment is manifestly contrary to law because the undisputed evidence shows that the contract upon which the appellee predicates his right to keep the $5,000 involved is an oral contract for the sale and purchase of real estate and therefore unenforceable under the statute of frauds. He says that the only written memorandum of the transaction signed by him is the check for $5,000 he gave the appellee on April 18, 1952, upon which he wrote the words "For payment on home 4635 Old Mill Road, Ft. Wayne, Ind. at $38,500." Such a memorandum, he insists, even if supplemented by the appellee's receipt, is too incomplete to meet the requirements of the statute of frauds in connection with contracts for the sale of real estate. With this we agree. This court said in *Block* v. *Sherman* (1941), 109 Ind. App. 330, 34 N. E. 2d 951:

> "The memorandum, in order to satisfy the Statute of Frauds, must contain all the essential stipulations and undertakings of the verbal bargain. If any of these stipulations are omitted, then the memorandum—although the parts which it does contain might, by themselves, make a complete contract—is not a note or memorandum of the agreement as required by the statute, and cannot be enforced at law or in equity. See Pomeroy on Specific Performance (1926), §91, p. 225; *Butler University* v. *Weaver* (1932), 97 Ind. App. 151, and numerous cases cited on p. 155."

See also *Sheldmyer* v. *Bias* (1942), 112 Ind. App. 522, 45 N. E. 2d 347, wherein we said:

> "The memorandum must set out the terms of the agreement so fully that the court can know from the writing what the party seeking to enforce the agreement was to do as well as what was to be done by the person against whom it was sought to be enforced. *Lee* v. *Hills* (1879), 66 Ind. 474, 480; *Burke* v. *Mead* (1902), 159 Ind. 252, 64 N. E. 880; *Porter* v. *Patterson* (1908), 42 Ind. App. 404, 409,

85 N. E. 797; *Neal* v. *Baker* (1926), 198 Ind. 393, 403, 153 N. E. 768.

"A contract in writing which leaves some essential term thereof to be shown by parol, is only a parol contract, and is therefore not enforceable under the statute of frauds. *Wertheimer* v. *Klinger Mills, Inc.* (1940), 216 Ind. 481, 485, 486, 25 N. E. 2d 246, 129 A. L. R. 1226."

It is apparent that the appellant's check and the appellee's receipt, viewed as a memorandum of an oral contract, omits many of the stipulations and undertakings of the verbal bargain as heretofore set out. It shows nothing concerning the assumption of taxes and is silent as to who is to take title upon completion of the deal. It contains no statement concerning interest on the possible unpaid balance for 60 days and the date the purchaser was to be put into possession of the premises. All these matters were specifically agreed upon orally but omitted from the written memorandum and we therefore hold that we are here concerned solely with an unexecuted oral contract for the sale of real estate.

The appellee insists, however, the fact there is nothing in the present situation which meets the requirements of the statute of frauds in reference to contracts for the sale of real estate is of no concern of the appellant. He says that the vendee, under agreement for the sale and purchase of real estate which does not satisfy the statute of frauds, cannot repudiate such contract and recover back a payment on the purchase price if the vendor is ready, willing and able to perform in accordance with the terms of a contract even though such contract is not enforceable against the vendee either at law or equity. With this statement of the law we also agree. In the first place the statute of frauds makes contracts, falling within its provision, unenforceable. No one is at-

tempting to enforce the contract here involved. The appellant is not seeking to compel the appellee to sell the property nor is the appellee seeking to compel the appellant to buy it. The appellant merely wants his down payment back and the appellee merely wants to keep it. In this connection the Supreme Court has said in *Day* v. *Wilson* (1882), 83 Ind. 463:

> "Such a contract is not entirely void under our statute of frauds. The party agreeing to convey may, in fulfilment of his contract, convey the land as agreed, and if he offers to do so, it is difficult to see how the purchaser who has advanced money upon such a contract can claim that the consideration upon which the money was advanced has failed, or that it was advanced without consideration. The contract was lawful, one which the parties had a right to make. The statute of frauds does not make it void, but simply declares that no action shall be maintained upon it. The money might pass without writing. The vendor waives the statute, pursuant to the agreement, proposes to convey and tenders the deed stipulated for. He has been at some trouble in preparing the conveyance. It would seem, upon principles of justice and fairness, that, if able and ready to execute the contract on his part, the vendee should not be allowed to withdraw from it and recover back the money advanced upon it."

The difficulty with applying the above principle of law to our present problem lies in the fact that the undisputed evidence compels the conclusion that the appellant is not the vendee of the real estate involved. The contract for its sale and purchase was between the appellee, as the vendor, and the Hirschbergs, as the vendees. Hirschberg and his wife wanted to buy the property but did not have the money to make the down payment and the appellant, Mrs. Hirschberg's father, made it for them. Had the appellant paid the entire purchase price and directed that the deed be made to his daughter and son-in-law,

they being the natural objects of his bounty, a presumption that the transaction was a gratuitous settlement would have arisen. *McQuaide, Admx.* v. *McQuaide* (1931), 92 Ind. App. 370, 168 N. E. 500. See also 54 Am. Jur., Trusts, §205. Although we have found no Indiana case so holding, it seems inescapable to us that the same principle of law must apply where one makes the down payment on real estate the title to which is ultimately to vest, upon his express agreement and understanding, in other persons who are the natural objects of his bounty. We hold therefore that under the undisputed facts in this case we must presume that the $5,000 the appellant now seeks to recover from the appellee was a gift to his daughter and son-in-law and that they are the real persons in interest in this law suit. We realize that the question of the appellant being a proper party plaintiff in the court below is not specifically raised in this appeal but we are furnished with a record upon which we are not permitted to look with a glass eye.

During the course of the trial the court admitted evidence of conversations with the Hirschbergs and statements by them outside the presence and hearing of the appellant. This is of no consequence in view of our conclusion that the appellant has no interest in the subject matter of this litigation.

Judgment affirmed.

NOTE.—Reported in 146 N. E. 2d 116.