In re David BLACKWELL, Debtor.

Ruth Reid NELSON, Plaintiff,

v.

David BLACKWELL, Defendant.

Bankruptcy No. 97–10610–FJO–13.
Adversary No. 97–465.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

June 9, 1998.

---

J. Bradley Schooley, Hostetler & Kowalik, Indianapolis, IN, for defendant.

Arthur J. Sullivan, Steers Sullivan, Indianapolis, IN, for plaintiff.

### ENTRY ON MOTION FOR DETER-
### MINATION OF PROPERTY
### OF THE ESTATE

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Verified Motion for Determination of Property of the Estate ("Motion for Determination"), filed by David Blackwell (the "Debtor") on March 13, 1998.[1] A hearing on the Motion for Determination (and on the Motion for Relief from Stay described in footnote 1 above) was held on May 27, 1998. The Court, having reviewed the Motion for Determination and the matters presented at the May 27, 1998 hearing, now makes the following Entry.

The Debtor filed a petition pursuant to Chapter 13 on September 12, 1997. Prior to and since the filing of the petition, the Debtor has resided in a house located at 2422 N. Kenwood Avenue, Indianapolis, Indiana (the "Kenwood Property"). The Kenwood Property is the subject of the instant dispute between the parties.

At some point early in 1996, the Kenwood Property was rented by Mrs. Reid to a tenant by the name of Ken Jewett ("Mr. Jewett").[2] According to Mrs. Reid, she agreed that the property could be occupied for two and one-half months' rent free, in exchange for repairs being made to make the property habitable. The Debtor also started occupying the property early in 1996. According to the Debtor, he made repairs to the Kenwood Property for a month before he moved in, and continued making repairs after he moved

in. At some point after the Debtor started making repairs to the property, Mr. Jewett vacated the premises. The Debtor is now the sole occupant of the property. The Debtor resided in the property for 21 months prior to filing his bankruptcy petition. He was not current on his monthly rental payments.[3] See Defendant's Exhibits 1 and 2.

At some point after the Debtor started residing in the Kenwood Property, various disputes arose between the parties. Mrs. Reid eventually sought to have the Debtor evicted for failure to pay rent, by filing a suit in small claims court. The Debtor initially won a judgment in his favor in the state court action, but that judgment has since been overturned. See Exhibit "A" to Response to Motion to Dismiss. The Debtor remains in the property today, and due to the pendency of the bankruptcy, Mrs. Reid has not made further attempts to evict the Debtor from the property.

All the disputes between the parties reduce to one issue: whether the Debtor and Mrs. Reid should be deemed to have entered into a contract for the sale of the Kenwood Property. Mrs. Reid says no, because there is no written agreement between the parties, and because she never orally agreed to sell the property to the Debtor. The Debtor says yes, because the parties had an oral agreement that the Debtor would make rental payments, and after a sales price was agreed upon, the rental payments would be applied toward the purchase price for the property. Additionally, the Debtor argues

---

1. This matter was set on the Court's calendar as a trial on the Complaint for Damages and Possession ("Complaint") filed by Ruth Reid Nelson ("Mrs. Reid") on November 14, 1997, and as a hearing on the Debtor's Motion for Determination. At the hearing before the Court, the parties agreed that Mrs. Reid's Complaint would be deemed a motion for relief from stay and abandonment ("Motion for Relief from Stay"), and that the hearing would go forward on the Debtor's Motion for Determination and on Mrs. Reid's Motion for Relief from Stay.

2. According to Defendant's Exhibit 9, the Kenwood Property was transferred by Lonnie Ellis to Mrs. Reid by quitclaim deed in June of 1997. Accordingly, at the time the property was leased to Mr. Jewett, Mrs. Reid did not own the property. However, because both the Debtor and Mrs.

Reid testified that Mrs. Reid handled the leasing arrangement with Mr. Jewett, the Court will assume that Mrs. Reid (as opposed to some other person) has acted, inter alia, in the capacity of landlord vis-a-vis the property since at least 1996.

3. The Debtor and Mrs. Reid did not execute a written lease agreement.

Kelly Crawford, the girlfriend of the Debtor, estimated that the Debtor has been living in the Kenwood Property since January of 1996. From January of 1996 to September of 1997, the month the Debtor filed his bankruptcy petition, the Debtor resided in the Kenwood Property for 21 months, yet he only has receipts for paying 10 months of rent. See Defendant's Exhibit 2. See also Defendant's Exhibit 1 (copies of money orders showing payments to "Ruth Nelson").

that he has partially performed pursuant to the parties' oral contract.

### The Statute of Frauds

■ The Statute of Frauds, Indiana Code Section 32-2-1-1, requires that a contract for the sale of real property be in writing.

No action shall be brought in any of the following cases:

... . .

Fourth. Upon any contract for the sale of lands

. . . .

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized....

### Did the Parties Execute a Written Agreement for the Sale of the Kenwood Property

■■ To meet the requirements of the Statute of Frauds, the parties must have executed an actual contract for the sale of land, or must have executed some more informal document or memorandum containing the elements that a land contract would typically contain. Based on the evidence before the Court,[4] the Court concludes that the parties did not execute a written agreement or memorandum for the sale of the Kenwood Property. The Debtor did tender, as one of his exhibits, several receipts whereon the words "Rent to Own" were written. *See* Defendant's Exhibit 2. The receipts are not sufficient as a matter of law to constitute a written agreement for the sale of real property.[5] The receipts do not specify, *inter alia,* the selling price, interest rate, or term of the alleged agreement to sell the Kenwood Property. *See Blake v. Hosford,* 180 Ind.App.

175, 387 N.E.2d 1335, 1340 (Ind.App.1979) (for an agreement to convey land to be enforced, it must "state with reasonable certainty the terms and conditions of the promises" made by the parties); *Young v. Bryan,* 178 Ind.App. 702, 368 N.E.2d 1 (1977) (contract for sale of land must set out the terms and conditions of the promises made); *Block v. Sherman,* 109 Ind.App. 330, 34 N.E.2d 951 (1941) (where signed receipt for down payment showed nothing concerning assumption of taxes, completion of abstract, or time for payment of balance, it was not a "memorandum" that would satisfy the Statute of Frauds).

### Does the Doctrine of Part Performance Remove the Parties' Alleged Contract from the Operation of the Statute of Frauds

The Debtor alleges that the parties had an oral agreement for the sale of the Kenwood Property, and further alleges that the parties' oral contract is enforceable due to the Debtor's part performance under the contract. The Debtor alleges that he has made improvements to the Kenwood Property, and that the improvements constitute part performance of the parties' alleged oral contract. The Creditor alleges that the parties had no oral agreement, and that the Debtor did not perform in a manner that constitutes part performance under the alleged contract.

■ An oral contract for the sale of land may be removed from the operation of the Statute of Frauds by the doctrine of part performance.

[W]hether there was performance sufficient to invoke the doctrine is a question which requires the examination of the circumstances of each case. To qualify as a part performance of the oral contract the circumstances must be founded on, and

---

4. At the hearing, the parties stipulated to the admission of Plaintiff's Exhibit B, C, and D, and Defendant's Exhibits 1, 2, 3, 4, 5, 6, 8, and 9. Defendant's Exhibit 7 was admitted over the objection of Mrs. Reid, for the purposes of summarizing the testimony of Kelly Crawford, the girlfriend of the Debtor.

5. Exhibit 2 consists of copies of ten receipts. Nine of the receipts are titled "Rent Receipt".

The receipts reflect payments made by the Debtor for the months of September 1996, October 1996, November 1996, December 1996, January 1997, February 1997, April 1997, May 1997, June 1997, and July 1997. The phrase "Rent to by" or "Rent to Buy" appears on all of the receipts. The receipts submitted by the Debtor bear the name of "Lonnie Ellis".

referable to, the oral agreement. Circumstances generally held sufficient to invoke the doctrine of part performance as an exception to the Statute of Frauds are some combination of the following: payment of the purchase price or a part thereof; possession, and lasting and valuable improvements on the land.

*Dupont Feedmill Corp. v. Standard Supply Corp.*, 182 Ind.App. 459, 395 N.E.2d 808, 811 (1979) (holding that there was no contract to sell between the parties).

### (a) *Was There an Oral Agreement to Which the Debtor's Alleged Part Performance Refers*

■ To qualify as a part performance of an oral contract, the performance must be founded on, and referable to, the alleged agreement between the parties. *Dupont,* 395 N.E.2d at 811. In other words, "part performance" standing alone does not suffice to remove an alleged oral contract from the Statute of Frauds; there must be some indicia that the alleged part performance relates back to an oral contract for sale entered into by the parties.

■ In *Dupont* (the case cited above), many of the indicia of an oral agreement were present. Most importantly, the seller *admitted* that the parties had met at least twice to discuss the proposed sale. Additionally, it was uncontroverted that the buyer had tendered a proposed written real estate contract to the seller, and that the seller had accepted a down payment bank draft in the amount of $60,000. Here, by contrast, Mrs. Reid testified that she never made an oral representation that she would sell the Kenwood Property to the Debtor. The Debtor and Mrs. Reid did not negotiate or draw up a written sales agreement, and there was no tender and acceptance of a down payment.

From observing the demeanor of the various witnesses as they testified, and from hearing their testimony, the Court concludes that it was solely the belief of *the Debtor* that there was going to be a sale of the Kenwood Property. It is apparent that Mrs. Reid never believed that she would sell the Kenwood Property to the Debtor. It appears that the Debtor was urging a position on Mrs. Reid that Mrs. Reid did not wish to adopt. There is evidence that Mrs. Reid agreed to taking at least one step toward effectuating a sale, *i.e.,* by allowing the Debtor to obtain an appraisal of the property, but it is evident that Mrs. Reid was at least somewhat fearful of the Debtor, and was only agreeing to an appraisal in order to stall the Debtor, and in the hope that he would stop confronting her in her home about the sale of the Kenwood Property.

For all the foregoing reasons, it is the conclusion of the Court that Mrs. Reid and the Debtor did not enter into an oral agreement for the sale of the Kenwood Property.

### (b) *Have the Three Elements of Part Performance Been Proven*

*Dupont* and other similar cases require that some combination of the following factors be proven in order to take an oral contract out of the Statute of Frauds: payment of the purchase price, or a part thereof; possession; and improvements to the property by the alleged buyer.

The Court notes first that the Debtor has not paid the purchase price for the Kenwood Property, and has not made any payment that would appear to be a down payment. *Compare Dupont Feedmill Corp. v. Standard Supply, Corp.,* 182 Ind.App. 459, 395 N.E.2d 808 (1979) (buyer tendered and seller accepted check for $60,000 down payment); *Lauer v. Raker,* 128 Ind.App. 264, 146 N.E.2d 116 (1957) (check was tendered by father of purchaser as part payment, and was noted to be for payment on property at certain address and at stated price).

■ Secondly, turning to the issue of possession, the Court notes that where possession is a continuation of an agreement prior to an alleged oral contract to sell, the possession is not sufficient to remove the oral contract from the operation of the Statute of Frauds. *McMahan Const. Co. v. Wegehoft Bros., Inc.,* 170 Ind.App. 558, 354 N.E.2d 278 (1976). *See also Brown v. Freudenberg,* 106 Ind.App. 692, 17 N.E.2d 865 (1938) (it must be shown that the purchaser went into possession under sale contract, in order to take an oral contract out of the Statute of Frauds); *Waymire v. Waymire,* 141 Ind.

164, 40 N.E. 523 (1882) (mere continuance of possession taken under a contract made prior to an oral purchase contract will not take the case out of the Statute of Frauds). The requirement that possession begin pursuant to a land sale contract (rather than pursuant to another contract such as a lease), has a sound foundation in public policy. The requirement makes it more difficult for the unscrupulous tenant to bootstrap himself into a purchase contract to which his landlord never agreed.

Here it is clear that the Debtor's possession of the Kenwood Property began pursuant to a lease, *i.e.*, the oral lease that Mrs. Reid entered into with Ken Jewett. The Debtor *admitted* that when he first moved into the Kenwood Property, he moved in pursuant to an oral lease. The Debtor further acknowledged in his testimony that when he first took up residence in the property, his residence was *not* pursuant to a contract to sell.

The Court turns finally to the improvements that the Debtor allegedly made to the Kenwood Property.[6] The Debtor's evidence of the improvements is not substantial. The Debtor presented three photographs that show that a new electrical box was installed in the Kenwood Property, and that some pipes were repaired in the basement. Other than the three photographs, there is no visual evidence of the alleged improvements. The Debtor presented no photographs of the room that the Debtor allegedly added on to the second floor of the Kenwood Property. Ms. Crawford testified that she had helped do cleaning, painting, and caulking when the Debtor first moved in, but she presented no evidence of the other repairs that the Debtor alleges he made. Defendant's Exhibit 7, admitted only as a summary of Ms. Crawford's testimony, is entitled to no weight regarding the truth of the matters asserted therein.

Having reviewed all the evidence before the Court, it is evident that the Debtor did make some repairs to the Kenwood Property to make the property habitable. It is the conclusion of the Court that few, if any, of the repairs went beyond the repairs to make the property habitable that Mrs. Reid had in mind when she offered to waive the payment of rent for two and a half months. Moreover, even assuming, *arguendo*, that the Debtor *did* make the repairs that he alleges he made, the fact remains that the Court concludes that there was no oral agreement to sell to which the repairs relate.

■ Taking into account all the facts before the Court, it is the conclusion of the Court that the doctrine of part performance does not remove the alleged oral contract of the Debtor and Mrs. Reid from the operation of the Statute of Frauds. The Debtor's Motion for Determination should be denied, and Mrs. Reid's Motion for Relief from Stay should be granted.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Determination be, and hereby is, DENIED, to the extent that the Court hereby HOLDS that the Debtor has no interest, as a purchaser pursuant to a land contract between the parties, in the property commonly known as 2422 N. Kenwood Avenue, Indianapolis, Indiana. Mrs. Reid is hereby GRANTED relief from stay, to pursue her remedies in state court for regaining possession of the property commonly known as 2422 N. Kenwood Avenue, Indianapolis, Indiana. The Debtor's interest, if any, in the property commonly known as 2422 N. Kenwood Avenue, Indianapolis, Indiana, is hereby ABANDONED from the estate.

---

6. Based on the fact that the Debtor has failed to establish the payment and possession elements of the part performance doctrine, the Court is not required to reach the issue of the improvements that the Debtor allegedly made. The Court will, however, address the issue, given the obvious importance the Debtor places on his allegations regarding the improvements.