[Cite as *Columbus v. Hutchison*, 2016-Ohio-3186.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-667 |
| v. | : | (M.C. No. 2014 TRC 186850) |
| Eric Hutchison, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 26, 2016

**On brief:** *Jessica G. D'Varga* and *Jon J. Saia,* for appellant. **Argued:** *Jon J. Saia.*

**On brief:** *Richard C. Pfeiffer, Jr.,* City Attorney, *Lara N. Baker,* City Prosecutor, *Melanie R. Tobias*, Appellate Director, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

APPEAL from the Franklin County Municipal Court

HORTON, J.

{¶ 1} Defendant-appellant, Eric Hutchison ("Hutchison"), charged with operating a vehicle while under the influence of alcohol ("OVI") under Columbus City Code 2133.01(A)(1), filed a motion to suppress evidence the city sought to introduce in its case against him. Hutchison argued that a testifying police officer was incompetent under Evid.R. 601(C), and that a pre-examination observation period conducted by an unlicensed operator of a breath testing machine rendered the test results inadmissible. The Franklin County Municipal Court overruled the motion and Hutchison appeals. For the reasons set forth below, we affirm.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On October 3, 2014, Officer Weston Tomlin of the City of Columbus Division of Police was working in an off-duty, "special duty" capacity performing general

security duties for a non-police employer at "The Hub," a privately owned parking garage. (Tr., 9-10.) While standing near a payment kiosk on the basement floor of the garage, Officer Tomlin observed Hutchison attempting to open a glass door from the stair area. (Tr., 12.) After 15 or 20 seconds of unsuccessfully pushing on the door, Hutchison finally opened it by pulling it toward him. *Id.* Officer Tomlin had seen Hutchison before and knew that he drove a blue Mazda. *Id.* Assuming that Hutchison was going to get in his car, Officer Tomlin advised him that if he was too drunk to open the garage door he "should probably find a different way home." (Tr., 24.) Hutchison walked to the payment kiosk, paid for his parking, and walked away. (Tr., 12; 23.)

{¶ 3} Approximately ten minutes later, Officer Tomlin saw Hutchison sitting in his parked car, with the car running. (Tr., 13.) Officer Tomlin told Hutchison that he was "too impaired to drive" and again advised him to "find a different way home." (Tr., 13; 16.) Hutchison said something in reply, but Officer Tomlin "couldn't even understand what he said." (Tr., 15.) At that point, Hutchison exited his vehicle and walked away again. (Tr., 13-14; 25.)

{¶ 4} Toward the end of his shift, as Officer Tomlin was making a final pass through the parking garage in his personal vehicle, he saw Hutchison slowly backing his car out of a parking space. (Tr., 14.) Officer Tomlin parked his vehicle, got out, and began to approach Hutchison. *Id.* When Hutchison saw Officer Tomlin, he stopped his car without being instructed to do so. *Id.* Hutchison rolled the car window down. (Tr., 15.) Officer Tomlin stated that he had "a duty to do," as he had told Hutchison "not to drive" out of concern that someone might get hurt. *Id.* Officer Tomlin asked Hutchison for his car keys and identification, then radioed for on-duty officers to come to the garage and "process the OVI." (Tr., 16.) Before seeing him operate his vehicle, Officer Tomlin had concluded that Hutchison was intoxicated based on his difficulty opening the door, his unintelligible slurred speech, how he "stumbled off" after using the parking kiosk, and his "red face." (Tr., 15.) Officer Tomlin also stated that he did not want to cite Hutchison for an OVI, as it was not his "purpose" while working at the garage. *Id.*

{¶ 5} Officer Jill Woolley and Officer Joel Little responded to the call. (Tr., 44; 91.) Officer Woolley administered field sobriety tests to Hutchison, which he failed. (Tr., 59-60.) Officer Woolley then arrested Hutchison, who agreed to submit to a breath

test. (Tr., 60.) She administered the test with a BAC DataMaster and an accompanying checklist approved by the Ohio Department of Health. (Tr., 64.)

{¶ 6}   Officer Woolley had a senior operator license for the BAC DataMaster that authorized her to perform breath tests with the machine. (Tr., 86-87.) One item on the approved testing checklist is a 20-minute observational period "to prevent oral intake of any material" by the subject prior to using the machine. (Tr., 87.) Officer Little, who did not have an operator's license for the BAC DataMaster, performed the 20-minute observation period and initialed that item on the checklist. *Id.* Hutchison's test result was .159 grams by weight of alcohol per 210 liters of breach, which was above the legal limit of .08. (Tr., 66.)

{¶ 7}   On December 1, 2014, Hutchison filed a motion to suppress the results of the sobriety and breath tests, as well as the testimony of the police officers involved in his arrest. In anticipation of an evidentiary hearing on the motion, Hutchison filed a motion in limine on March 24, 2015, that sought to preclude Officer Tomlin from testifying on the grounds that he was incompetent as a matter of law under Evid.R. 601(C). The rule forbids the introduction of testimony by an officer who was "on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor" if the officer "was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute." Evid.R. 601(C).

{¶ 8}   A hearing on the motion to suppress was held on May 27, 2015. The trial court first heard from Officer Tomlin so that it could make a preliminary ruling on the admissibility of his testimony. (Tr., 8.) Citing Officer Tomlin's off-duty status, the trial court stated that, under *Columbus v. Stump*, 41 Ohio App.2d 81 (10th Dist.1974), the exclusion under Evid.R. 601(C) did not apply to "a police officer who while engaging in an assignment unrelated to the enforcement of traffic laws observes violations of such laws and makes an arrest." (Tr., 40-41.) Thus, the trial court concluded that Officer Tomlin had not been "on duty for the exclusive or main purpose of enforcing the traffic laws" under the rule, and was competent to testify. *Id.*

{¶ 9}   In order to rule on the motion to suppress, the trial court then heard additional testimony from Officer Woolley and Officer Little. (Tr., 42-100.) After their testimony, Hutchison's attorney argued that the breath test did not comply with the law

because Officer Little had performed the required 20-minute observation period without being a licensed operator of the BAC DataMaster. (Tr., 106.) The trial court considered this argument, but concluded that the breath test was admissible because it had substantially complied with all statutory and legal requirements. (Tr., 113.) The trial court did exclude some evidence not challenged on this appeal, a ruling that effectively sustained in part and overruled in part Hutchison's motion to suppress. (Tr., 111.) Nevertheless, based on the admitted evidence, the trial court ultimately concluded that reasonable suspicion had supported Officer Tomlin's initial decision to detain Hutchison, and that probable cause supported his arrest. (Tr., 110.)

{¶ 10} Hutchison entered a plea of no contest, and the trial court imposed sentence on July 8, 2015. He now appeals, asserting the following two assignments of error:

> [I.] The trial court erred in finding that Officer Tomlin was competent to testify at the motion hearing under Ohio Evid.R. 601[(C)].[1]
>
> [II.] The trial court erred in finding that an officer who does not hold a permit to operate a BAC DataMaster may complete the 20-minute observation and this portion of the Operational Checklist.

## II. STANDARD OF REVIEW

{¶ 11} Although not expressly stated, each assignment of error assumes that the trial court erred by overruling the motion to suppress and admitting the evidence in question. Those actions by the trial court determine our standard of review.

{¶ 12} A lower court's decision resolving a motion to suppress presents an appellate court with "a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The factual component requires some deference to the trial court's findings, as that court was "in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio

---

1 In several places, Hutchison's brief cites Evid.R. 601(A) as the grounds for his first assignment of error, but the competency exclusion under (A) pertains to persons of "unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Subsection (C) states the exclusion for police officers relevant to his appeal.

St.3d 19 (1982). However, applying a de novo standard, the appellate court "must independently determine whether the facts satisfy the applicable legal standard, without giving any deference to the conclusion of the trial court." *State v. Holland*, 10th Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 8, citing *Burnside* at ¶ 8.

## III. FIRST ASSIGNMENT OF ERROR

{¶ 13} In his first assignment of error, Hutchison argues that the trial court should have found that Officer Tomlin was an incompetent witness under Evid.R. 601(C) and excluded his testimony.

{¶ 14} Evid.R. 601, the "General Rule of Competency," sets forth a presumption that "[e]very person is competent to be a witness," while listing several exceptions. Among the exceptions is the following:

> An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.

Evid.R. 601(C).

{¶ 15} The Supreme Court of Ohio has adopted Evid.R. 601(C) as a restatement of R.C. 4549.14. R.C. 4549.14 states:

> Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.

{¶ 16} The Supreme Court of Ohio interprets the phrase "on duty for the exclusive or main purpose of enforcing traffic laws" in Evid.R. 601(C), and similar language in R.C. 4549.14, as referring "to the officer's main purpose for his whole period of duty and not to his duty during the apprehension and arrest of the suspect." *State v. Huth*, 24 Ohio St.3d 114, 116 (1986), citing *Stump*. In *Huth*, the officer was working "assigned duty as a full-time security guard" at an airport, which included patrolling nearby public roads in a non-

police security vehicle. *Id.* at 114. After citing a driver for running a stop sign, the driver challenged the officer's competency as a witness under Evid.R. 601(C). *Id.* When examining "the officer's main purpose for his whole period of duty," the Supreme Court of Ohio reasoned the officer's:

> [P]rimary duty was airport security, not traffic law enforcement, at the time he observed Huth violating a traffic law. His decision to pursue and arrest her did not change the "main purpose" of his law enforcement duty as referred to in R.C. 4549.14 and Evid. R. 601(C). Therefore, we hold that [the officer] was competent to testify.

*Id.* at 116.

{¶ 17} Following *Huth's* direction to examine the officer's main purpose for his whole period of duty, we find that there was competent, credible evidence in the record for the trial court to conclude that the main purpose of Officer Tomlin's "special duty" at the garage was not the enforcement of traffic laws. Officer Tomlin affirmatively stated that his work at the garage did not include the enforcement of traffic laws, and was only "general security." (Tr., 9.) He described "car break-ins there, intoxicated people urinating in the garage, and sometimes drunk people driv[ing] through the gates at the garage." *Id.* He repeatedly urged Hutchison to leave the garage and "find a different way home" before calling the on-duty officers to arrest Hutchison. He also testified that he "didn't want to give him a DUI. I mean, you know, that's not my purpose there." (Tr., 16.) These statements show that while the general security duties Officer Tomlin performed may have, on occasion, involved the enforcement of traffic laws such as OVI, that was not his main purpose while working there. As in *Huth*, Officer Tomlin is not precluded from testifying simply because he observed the violation of a traffic law while performing general security duties. Such an officer may act in the interests of public safety without having his testimony later declared inadmissible under Evid.R. 601(C).

{¶ 18} Such a result would be at odds with the legislature's purpose in enacting R.C. 4549.14, which was "to provide uniformity in traffic control and to curb the 'speed traps' that were often operated by municipal and township peace officers in unmarked cars." *Huth* at 115, citing *Dayton v. Adams*, 9 Ohio St. 2d 89 (1967). "The purpose was certainly not to inhibit all police officers, except those primarily on traffic duty, from arresting a person violating traffic or motor vehicle laws." *State v. Horton*, 12th Dist. No.

CA2000-04-024 (Dec. 26, 2000). Officer Tomlin was not engaged in a subterfuge to entrap unsuspecting motorists, and excluding his testimony under Evid.R. 601(C) would not deter such police conduct.

{¶ 19} Furthermore, as a municipal police officer, Officer Tomlin had a continuing obligation to enforce the law, regardless of his on-duty or off-duty status, under R.C. 2935.03(A)(1): "A * * * municipal police officer * * * shall arrest and detain, until a warrant can be obtained, a person found violating * * * a law of this state, an ordinance of a municipal corporation, or a resolution of a township." The statute authorizes an officer to make "a warrantless arrest for a misdemeanor [when] the offense is committed in the officer's presence." *City of Lakewood v. Crump*, 8th Dist. No. 93618, 2010-Ohio-5581, ¶ 11. *See also State v. Glover*, 52 Ohio App.2d 35, 38 (10th Dist.1976) (holding that an "officer, even though acting as a private security policeman, had the right and duty to arrest and detain a person who was violating a law of this state or an ordinance of the city of Columbus until a warrant could be obtained").

{¶ 20} This obligation is echoed in Rule 1.08(A) of the Columbus Police Division's Rules of Conduct: "Sworn personnel, regardless of duty status, shall take prompt, effective action regarding anything which comes to their attention requiring a police response within the City of Columbus." (Columbus Police Division Directive 1-01, 2.) Officers "are not relieved of the responsibility for taking proper action when they are detailed to special duties." *Id.* Special duty status is defined as a "period of time an officer is in paid status by an employer other than the City of Columbus and evolving directly from the authority granted to the individual by virtue of being a sworn law enforcement officer." (Columbus Police Division Directive, Definitions, 7.)

{¶ 21} Thus, while working for the parking garage in a special duty capacity, Officer Tomlin had an affirmative responsibility to take action when he saw Hutchison operating a vehicle while intoxicated. As the trial court noted, "he might have prevented Mr. Hutchison from killing himself or seriously harming someone else" by detaining Hutchison. (Tr., 41.) Officer Tomlin's "ongoing obligation" to respond to violations of the law while off duty or on special duty "includes the enforcement of traffic laws, but it is not exclusively or primarily for that purpose." *Horton* (holding that an off-duty officer who follows an impaired driver in an unmarked vehicle, calls for assistance, and then waits

with the defendant until arresting officers arrive is not incompetent to testify under Evid.R. 601(C)).

{¶ 22} Hutchison cites *State v. Stevens*, 5th Dist. No. CA-9289 (Dec. 20, 1993), and *State v. Heatherly*, 12th Dist. No. CA92-05-080 (Dec. 21, 1992), two cases in which off-duty officers driving personal vehicles observed intoxicated drivers whom they followed and subsequently arrested. In both cases, the courts held that the officers were incompetent to testify under Evid.R. 601(C) because, in following and apprehending the drivers, the officers had effectively come back on duty for the exclusive purpose of enforcing traffic laws. Hutchison argues that because Officer Tomlin had finished his special duty shift, was off duty, and was driving his personal vehicle through the garage when he observed Hutchison backing out of a parking space, he also came back on duty for the sole purpose of enforcing traffic laws, and is therefore incompetent under Evid.R. 601. (Appellant's Brief, 10-11.)

{¶ 23} However, the record in this case does not show that Officer Tomlin was off duty before coming back on duty for the sole purpose of enforcing the OVI laws. Officer Tomlin testified that the final encounter with Hutchison occurred at 2:38 a.m., and that his shift ended at 3:00 a.m. (Tr., 14; 16.) He also described his actions immediately before seeing Hutchison operate his vehicle as follows:

> I'll drive my personal car through, drive up the garage, make sure nobody is doing stuff in their cars or what not, or passed out drunk in the garage. So I go up; I come back down. His car is now over here, so at some point he moved it. And as I'm coming down here, he's starting to back up.

(Tr., 14.)

{¶ 24} Based on this statement, Officer Tomlin was still performing his general security special duties at the time, and did not come back on duty from an off-duty status for the sole purpose of enforcing traffic laws.

{¶ 25} Furthermore, unlike the present case, *Stevens* and *Heatherly* both emphasized the officers' use of their vehicles to effect the arrests. *Stevens* at 4-5 (holding officer incompetent under Evid.R. 601(C) where he had "pursued appellee as a 'possible drunk driver' which offense is punishable as a misdemeanor," and was therefore "on duty exclusively or for the main purpose of enforcing the traffic laws"); *Heatherly* at 1 and 5 (holding that "by following appellant and apprehending him, it is clear that [the officer's]

sole enforcement duty during the entire period of time that he was 'on duty' was to enforce a traffic law," where the officer "flashed his headlights and honked his horn" in an attempt to stop the driver). Here, however, Officer Tomlin had parked his vehicle before detaining Hutchison and did not use it to stop him. (Tr., 14.) Officer Tomlin stated that Hutchison "stopped when he saw me. I didn't even have to ask him to stop." *Id.* We have previously held that an off-duty officer who, in a personal vehicle, follows an intoxicated driver home before arresting the driver is competent to testify under Evid.R. 601 where the officer "did not use his unmarked vehicle in any manner to stop appellee's vehicle." *State v. Whitmer*, 10th Dist. No. 94APC03-455 (Aug. 16, 1994); *Horton* at 18 (holding that officers were competent, where they "did not attempt to pull appellant over using an unmarked vehicle"). Officer Tomlin did not come back on duty for the sole purpose of assisting in the arrest of Hutchison for an OVI infraction, nor did he use an unmarked vehicle to do so.

{¶ 26} For the foregoing reasons, we hold that there was competent and credible evidence to support the determination that Officer Tomlin was not on duty for the exclusive or main purpose of enforcing traffic laws, and that he was therefore competent to testify under Evid.R. 601. The trial court did not err when it admitted the officer's testimony. Accordingly, the first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR

{¶ 27} In Hutchison's second assignment of error, he asserts that the trial court erred by admitting the results of the breath test because Officer Little, who did not hold a permit to operate a BAC DataMaster, performed the 20-minute observation period prior to its operation. According to Hutchison, observation by a person not licensed to operate the machine fails to meet the standard for substantial compliance with the relevant statutory and regulatory standards, as required by the Supreme Court of Ohio in *Burnside*.

{¶ 28} After a defendant files a motion to suppress the admission of alcohol test results, "the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health." *Burnside* at 157. Substantial compliance creates a "presumption of admissibility" that the defendant can only rebut "by demonstrating that he was prejudiced by anything less than strict

compliance" with the regulations. *Id.*, citing *State v. Brown*, 109 Ohio App.3d 692 (4th Dist.1996).

{¶ 29} Chapter 3701-53 of the Ohio Administrative Code governs alcohol testing. It lists the BAC DataMaster as an approved "evidential breath testing instrument" that may be used to analyze whether an individual's breath alcohol concentration exceeds a legally allowable amount. Ohio Adm.Code 3701-53-02(A)(1); *see also* R.C. 4511.19 (defining alcohol concentration levels for an OVI infraction). Furthermore, "Breath tests used to determine whether a person's breath contains a concentration of alcohol prohibited [by Ohio law] * * * shall be performed by a senior operator or an operator." Ohio Adm.Code 3701-53-07.

{¶ 30} In *Village of Bolivar v. Dick*, 76 Ohio St.3d 216, 218 (1996), the Supreme Court of Ohio held that "when two or more officers, one of whom is a certified operator of the [statutorily approved breath testing instrument], observe a defendant continuously for twenty minutes or more prior to the administration of a breath-alcohol test, the twenty-minute observation requirement of the [instrument's] operational checklist has been satisfied." The precise factual situation in *Bolivar* concerned two observational periods prior to the test: an initial period longer than 30 minutes and a subsequent period, immediately before the breath test, that only lasted 16 minutes. Only the second observation period was performed by an officer licensed to operate the breath testing instrument. Adopting the "substantial compliance" standard applicable to a urine-alcohol test in *State v. Plummer*, 22 Ohio St.3d 292 (1986), the Supreme Court of Ohio held this satisfied the observational period requirement.

{¶ 31} In an effort to distinguish *Bolivar* from the facts of this case, Hutchison interprets it as requiring that "at least one of the observers *must* hold a permit" for the observational period to be valid. (Emphasis added.) (Reply Brief, 11.) Such a requirement would be at odds with *Bolivar*'s discussion of the checklist's observational period, where the court stated that it was "clear that the focus of this item" was the prevention of any ingestion of material by the subject, "not to ensure that a certified operator does the observing." *Bolivar* at 218. Furthermore, the Supreme Court of Ohio framed the issue before it as whether "the result of a breath-alcohol test is admissible" when it is performed "by *someone other than the operator* of the testing instrument." (Emphasis added.) *Bolivar* at 218. The only observation period in *Bolivar* that lasted the entire 20-minute

period required by the regulation was performed by a non-operator. In short, substantial compliance with the regulation does not require that a licensed operator observe the subject for 20 minutes to prevent the ingestion of material. Surely, any trained police officer is up to the task of observing a subject for 20 minutes to prevent the ingestion of any foreign substance.

{¶ 32} Even before *Bolivar*, this Court had expressly held that the observational period may be performed by someone other than the licensed operator. *See City of Columbus v. Grove*, 10th Dist. No. 95APC06-679 (Nov. 14, 1995) (noting that "an absurdity would result by requiring one to have special licensing or training (in operating the instrument itself) simply to watch someone to make sure that he or she ingests nothing for twenty minutes"); *Columbus v. Robbins*, 61 Ohio App.3d 324, 329 (10th Dist.1989) ("There is no requirement that the BAC Verifier operator personally observe the appellant. The personal observation of the arresting officer may be found to be sufficient"). These pre-*Bolivar* holdings are consistent with its substantial compliance standard. Applying that standard to Hutchison's case, we hold that the 20-minute observation period performed by Officer Little satisfied the standard. Accordingly, the second assignment of error is overruled.

## V. CONCLUSION

{¶ 33} Having overruled both assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

———————————